SOUTHEASTERN SEAPRODUCTS,
INC.,

        Petitioner,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

        Respondent.

_____/

IN THE CIRCUIT COURT OF THE 18TH
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

## PETITION FOR DECLARATORY RELIEF

COMES NOW, SOUTHEASTERN SEAPRODUCTS, INC., (hereinafter "Petitioner"), by and through the undersigned attorney, and hereby sues WESTCHESTER SURPLUS LINES INSURANCE COMPANY, (hereinafter "Respondent"), and alleges:

1. This is an action for declaratory judgment as to the value of covered damages under an insurance policy for loss with a value in excess of $50,000.00 so as to be within the jurisdictional limits of the court.

2. This action is brought pursuant to Fla. Stat. §86.061, commonly referred to as Florida's Declaratory Relief Statute.

3. At all times material hereto, Petitioner was a Florida Corporation doing business in Brevard County, Florida.

4. At all times material hereto, Respondent was and is an insurer in The State of Florida doing business in Brevard County, Florida.

5. The property that forms the subject of this matter is located in Brevard County, Florida.

6. Petitioner has complied with all conditions precedent to the filing of this action for declaratory relief.

7.      At all times material hereto, in consideration of premiums paid by Petitioner, there was in full force and effect a certain insurance policy being Policy number FSF16203592 002 (hereinafter the "Policy").  A copy of the Policy is attached hereto as **Exhibit A**.

8.      Under the terms of the Policy, Respondent insured Petitioner against certain losses to Petitioner's property located at 1500 Maple Ave., Melbourne, FL 32935 (hereinafter the "property").

9.      On or about April 26, 2023, while the Policy was in full force and effect, Petitioner suffered damage to the insured property caused by a wind and hail storm (hereinafter the "loss").

10.     Petitioner timely reported the loss and Respondent assigned claim number KY23K2874003 to the loss.

11.     Respondent retained Stephens Engineering Consultants and JS Held Construction Consultants to assist in its claim investigation and inspect the damaged property.

12.     Thereafter, Respondent conducted two separate inspections of the damaged property on September 28, 2023 and October 27, 2023.

13.     January 26, 2024 Respondent determined that the property sustained direct physical loss as a result of a covered event pursuant to the Policy.  However, Respondent provided no payment to the Petitioner as it asserted the value of the damages sustained fell below the policy's deductible.[1]

---

[1] Undersigned did not receive a copy of this correspondence until August 8, 2024 following mediation. Both Petitioner and its public adjuster assert that a copy was never received by either of them.  They were therefore unaware of the January 26, 2024 coverage determination and were under the impression it remained pending/under review.  Further,

2

14.    Specifically, Respondent wrote, "[o]ur estimate has a Replacement Cost Value of $37,551.52 less depreciation in the amount of $2919.92, less the applicable $95,000.00 deductible, for a Net Claim Value of $0.00." Respondent's January 26, 2024 correspondence is attached hereto as **Exhibit B**.

15.    On or about May 2, 2024 Petitioner provided the Respondent with an estimate for the full amount of the damages sustained and a fully executed sworn proof of loss. The estimate and proof of loss are attached hereto as **Exhibit C**.

16.    A dispute as to the amount of loss existed at this time.

17.    No response or further action was taken by the Respondent.

18.    May 29, 2024 undersigned wrote to Respondent advising that he had been retained by the Petitioner regarding and requested copies of all claim related materials. No response was had. See Petitioner's May 29, 2024 correspondence attached hereto as **Exhibit D**.

19.    In addition to sending a letter of representation to Respondent on May 29, 2024 Petitioner also filed a Notice of Intent to Institute Litigation pursuant to Fla. Stat. §627.70152. The May 29, 2024 Notice is attached hereto as **Exhibit E**.

20.    The Notice requires the filer to assert the "Alleged Acts or Omissions of the Insurer." Petitioner, *having never previously received a copy of the coverage determination*, asserted: "The insurer has breached the policy of insurance and effectively denied coverage by its failure to comply with the policy's loss payment provision…[and] continues to refuse to either reach a conclusion and/or issue payment. As a result of its

---

this is the reason undersigned's correspondence of May 29, 2024 states, "My client has retained my law firm to pursue all legal remedies due to *your failure to timely determine coverage for its loss*." (emphasis added). See **Exhibit B**.

3

inaction the Insurer has tacitly denied coverage and payment to its policyholder/Claimant."

21.     Again, at this time neither the Petitioner nor its representatives had received a copy of the Respondent's January 24, 2024 coverage determination.

22.     July 15, 2024 Respondent, through its counsel, responded to the Notice.  It wrote, "Pursuant to section 627.70152(4)(b) *Fla. Stat.*, Westchester is requiring your client to participate in private mediation as our selected method of alternative dispute resolution."  The correspondence also requested documentation from the Petitioner.  See **Exhibit F**.

23.     August 6, 2024 the undersigned counsel sent various documents to Respondent's counsel in response to the request and in advance of the mediation in hopes that it would foster a meaningful negotiation and resolution of the matter.  See the email correspondence attached hereto as **Exhibit G.**

24.     Respondent, on the other hand, had not shared one scintilla of information or documentation in response to Petitioner's May 29, 2024 letter of representation requesting numerous forms of documentation regarding the claim, including the essential coverage determination correspondence of January 24, 2024.

25.     August 8, 2024 the parties mediated to impasse.  However, the Petitioner learned, *for the first time*, that a coverage determination had been reached *eight months earlier* on January 26, 2024.  Respondent's counsel thereafter emailed a copy of the January 24, 2024 coverage determination to undersigned counsel that same day.[2]

---

[2] The January 24, 2024 coverage determination letter is the sole claim related document Respondent has ever sent to Petitioner to date despite repeated requests for claim related materials, e.g., estimates, reports, statements, etc. Meanwhile, Respondent asserts the Petitioner has withheld documents and things from its review.

26.    Any doubt that the parties disagreed as to the amount of covered damage had now been dispelled.  Both sides possessed and presented differing assessments of the value covered damages to one another.

27.    August 12, 2024 having learned of the Respondent's acceptance of coverage, albeit below the applicable deductible, Petitioner elected to file a *second Notice of Intent to Initiate Litigation* to rectify the deficiency of the first Notice filed on May 29, 2024.  See the second Notice of Intent to Initiate Litigation attached hereto as **Exhibit H**.

28.    In essence, the first Notice was admittedly deficient because it alleged a *tacit denial* of coverage due to the ill-perceived notion that no coverage determination had been reached to that point; the second Notice properly alleged that coverage had been accepted in compliance with the dictates of Fla. Stat. 627.70152, which differentiates between "denied" and "covered" claims and the legal requirements of the notice for each type of claim determination.

29.    August 16, 2024 Respondent sent correspondence to Petitioner identified as a "reservation of rights and request for information."  See the August 16, 2024 correspondence attached hereto as **Exhibit I**.

30.    August 26, 2024 Respondent provided its response to the second Notice. See the August 26, 2024 correspondence attached hereto as **Exhibit J**.

31.    September 5, 2024 undersigned counsel responded to both the August 16 and 26, 2024 correspondences from Respondent.  See Petitioner's September 5, 2024 correspondence attached hereto as **Exhibit K**.  Therein, Petitioner included a DropBox link to a voluminous cache of documents in response to the request for information.

32.    September 13, 2024 Petitioner formally invoked the Policy's appraisal

5

provision in an effort to obtain an expeditious resolution to the dispute as to the amount of covered damages as provided by the contract of insurance. The hope was to avoid costly and time consuming litigation, which is the purpose of appraisal. See Petitioner's September 13, 2024 invocation of appraisal attached hereto as **Exhibit L**.

33.     September 24, 2024 Respondent provided its "Rejection of Appraisal Demand, Renewed Reservation of Rights and Request for Information" letter to Petitioner. See the September 24, 2024 correspondence attached hereto as **Exhibit M**.

34.     October 9, 2024 undersigned counsel responded by advising Respondent "…you are now in breach of the policy's appraisal terms." See Petitioner's October 9, 2024 correspondence attached hereto as **Exhibit N**.

35.     November 20, 2024, rather than concede that a dispute as to the amount of covered damage existed and proceed to appraisal per the policy terms, Respondent elected to further delay the process by requiring the Petitioner to appear for an examination under oath. See Respondent's Notice of Examination under oath attached hereto as **Exhibit O**.

36.     December 10, 2024 undersigned wrote to Respondent and *once again* provided documents in response to Respondent's repeated requests in advance of Petitioner's examination under oath. See **Exhibit P**.

37.     December 11, 2024 Mark Maynard, Jr. (Vice President of Southeastern Seaproducts, Inc.) appeared for examination under oath on behalf of Petitioner and answered all questions in full compliance with the policy's "Duties After Loss" provision.

38.     January 13, 2025 Respondent sent correspondence following up on the examination under oath. See **Exhibit Q**.

6

39.    February 21, 2025 undersigned responded to the January 13, 2025 correspondence via email with additional documents discussed during the examination under oath.   Specifically, the documents requested/provided pertained to a prior claim/damage related to a hurricane loss sustained at the property.  All documents related to the prior loss, events, repairs, invoices, etc., were provided.  See the February 21, 2025 email attached hereto as **Exhibit R**.

40.    March 18, 2025 Respondent provided its "Final Reservation of Rights and Request for Information."  See **Exhibit S**.

41.    March 28, 2025 undersigned responded to Respondent's March 18, 2025 correspondence.  Therein it was made clear that Petitioner "…has not only provided all the documents it is able to locate in response to your company's voluminous requests, it produced Mark Maynard, Vice President, to testify and answer all questions posed for several hours…[and] has fully complied with all demands placed upon it to date."  See Petitioner's March 28, 2025 correspondence attached hereto as **Exhibit T**.

42.    Respondent was reminded about the Petitioner's September 13, 2025 invocation of appraisal and its failure to comply with the policy's appraisal requirement to identify its chosen appraiser.

43.    May 27, 2025 Respondent refused appraisal when it wrote, "…your demand for appraisal is rejected."  See Respondent's May 27, 2025 correspondence attached hereto as **Exhibit U**.

44.    A dispute as to the amount of loss presently exists.

45.    A meaningful exchange of information has occurred sufficient to appraise the Respondent of the dispute and create an appraisable issue as required by Florida

7

law.

46.    Appraisal is ripe.

47.    Respondent has wrongfully denied further consideration of the Petitioner's claim and has refused to name its appraiser according to the requirements of the policy's appraisal provision.

48.    The policy provides that if the parties fail to agree on the amount of a loss, either party may invoke appraisal to determine the amount of the loss (hereinafter called the "appraisal process"). See **Exhibit A** at page 10 of 16 where it states, in relevant part, as follows:

> **E. Loss Conditions.**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:
>
> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, *each party will select a competent and impartial appraiser*. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
> …
> (emphasis added)

49.    The Respondent has refused to name its chosen appraiser pursuant to the specific language of the Policy. Furthermore, Respondent has refused to engage in the appraisal process despite the Petitioner's full cooperation and rightful invocation of the Policy's Appraisal Clause.

50.    The Respondent has repeatedly refused to appraise the loss and has voiced said refusal in writing on more than one occasion.  See Exhibit R.

51.    Arguably, the Respondent has thereby breached the Policy's Appraisal Clause.

52.    Although the policy provides for the appraisal process to determine a disagreement as to the amount of a loss, there must be an acknowledgment by Respondent or a Court determination there has been a covered loss before Petitioner is entitled to an appraisal. See *Corzo v. American Superior Ins. Co.*, 847 So. 2d 584 (Fla. 3d DCA 2003).

53.    The declaratory relief process sought in this action is not extraordinary and is consistent with the decision of the Supreme Court of Florida in  *Higgins v. State Farm*, 894 So.2d 5 (Fla. 2004), in which the court held that in conformance with the recent trend of the law, declaratory judgment statutes have now been construed to authorize an action to declare the existence or nonexistence of any right, or of "*any fact upon which the existence or nonexistence of such … right does or may depend, and whether such … right … now exists or will arise in the future.*"

54.    Therefore, in this action, Petitioner has done exactly what the Florida Supreme Court in *Higgins* and the Third District Court of Appeals in *Corzo* reasoned should be done. The Petitioner has brought suit on the insurance policy for a determination of coverage. Once coverage is established, if there is a disagreement as to the amount of the loss, the appraisal will be warranted.

55.    Although Petitioner believes that there has been a covered loss, Petitioner is in doubt or is uncertain as to the existence or non-existence of their rights to coverage

9

under the policy and have an actual, practical and present need for a declaration of their rights by the court. Specifically, whether the Parties are required to proceed to appraisal now that a dispute exists as to the amount of covered damages and invocation of the Policy's Appraisal Clause.

56.    As a direct and proximate result of the foregoing conflicting positions of the parties, there is an actual bona-fide controversy between the parties which requires judicial interpretation as to Petitioner's rights relative to coverage of the loss and the appraisal process.

57.    Without such a declaratory decree, Petitioner is unable to obtain full insurance benefits under the policy.

58.    All conditions precedent to the filing of this action have been complied with, met or otherwise waived.

59.    Petitioner has been obligated to engage the undersigned attorneys for the prosecution of this action and are entitled to payment of reasonable attorneys fees pursuant to Fla. Stats. §§ 626.911, 626.9373, 627.428, 627.70152.

WHEREFORE, Petitioner requests this Honorable Court issue a declaratory judgment as follows:

    a.    declare Petitioner sustained a covered loss under the policy;

    b.    declare a meaningful exchange of information has occurred;

    c.    declare an appraisable issue exists;

    d.    declare a dispute exists as to the amount of covered damages;

    e.    compel Respondent to name its chosen appraiser;

    f.    compel Respondent to submit the disagreement as to covered

10

damages to appraisal pursuant to the terms of the Policy;

       g.    declare this litigation was brought as a result of Respondent's refusal to appraise the loss;

       h.    declare this litigation was brought for a legitimate purpose, i.e., to compel Respondent to commence appraisal;

       i.    award Petitioner reasonable attorney's fees pursuant to Fla. Stat. §§ 626.911, 626.9373, 627.428, 627.70152;

       j.    award Petitioner prejudgment and postjudgment interest and court costs; and

       k.    declare such other and further orders or decrees as justice may require or deemed just and proper.

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that a true copy of the foregoing was filed with the Clerk of Court using the Florida Courts E-Filing Portal pursuant to the requirements of FLA. R. Jud. Admin. 2.516(b)(1) on June 18, 2025.

          Respectfully submitted,

          **DIVERSE LEGAL SOLUTIONS, A LAW FIRM**
          55 Weston Road, Suite 408
          Weston, FL, 33326
          Telephone: 954.361.7507
          Facsimile: 954.354.3338
          Email: saj@diverselegalsolutions.com
               scollado@diverselegalsolutions.com
               service@diverselegalsolutions.com

By:    /s/ S. Antonio Jimenez
S. Antonio Jimenez, Esq.
Florida Bar Number 658731

For all scheduling matters, please reach out to:
scheduling@diverselegalsolutions.com

12

EXHIBIT A

 **Westchester Surplus Lines Insurance Company**

Insured:
Southeastern Seaproducts Inc

Attached To Policy No.:  FSF16203592 002

Effective Date:  09-27-2022

---

## FLORIDA SURPLUS LINES NOTIFICATION

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

## *Policy Declarations*

**Westchester**
A Chubb Company

| Policy No.  FSF16203592 002 | Renewal of:  FSF16203592 001 |
|---|---|

**NAMED INSURED & MAILING ADDRESS**

Southeastern Seaproducts Inc
DBA:
1500 Maple Ave
Melbourne, FL 32935

**POLICY PERIOD**

| When Coverage Begins: | 09/27/2022 | 12:01 A. M. Local Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | 09/27/2023 | 12:01 A. M. Local Time At Named Insured's Address |

| INSURING COMPANY | Producer's Name & Address: |
|---|---|
| **Westchester Surplus Lines Insurance Company (A.M. Best Rating A++)** | **BASS UNDERWRITERS INC**<br>**1005 S DILLARD STREET**<br><br>**WINTER GARDEN**<br>**FL**<br>**34787**<br>Producer No.:**Z11701** |

**ATTACHED FORMS**

**Authorization Information**

Dated: 09/26/2022

_____
Authorized Representative

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

# *CHUBB Westchester Binding Common Policy Declarations*



| | | | |
|---|---|---|---|
| Policy Number: | FSF16203592 002 | Renewal of: | FSF16203592 001 |
| Company Name: | Westchester Surplus Lines Insurance Company (A.M. Best Rating A++) | | |
| Named Insured & Mailing Address: | Southeastern Seaproducts Inc **DBA:** 1500 Maple Ave Melbourne, FL 32935 | Producer's Name & Address: | BASS UNDERWRITERS INC 1005 S DILLARD STREET WINTER GARDEN, FL 34787 |
| | | Producer No.: | Z11701 |

**General Policy Information And Policy Period**

| | | |
|---|---|---|
| Form of Business: | | Business Description: |
| When Coverage Begins: | 09/27/2022 | 12:01 A.M. Local Time at Named Insured's Address |
| When Coverage Ends: | 09/27/2023 | 12:01 A.M. Local Time at Named Insured's Address |

**In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s). Premiums may be subject to adjustment.

*Coverage Form*

| | |
|---|---|
| Property | $18,207.00 |
| **Total Policy Term Premium:** | **$18,207.00** |
| **Total Amount Due:** | $18,207.00 |

**Attached Forms Information**         **See Forms Schedule CPFS2**

Date Issued:   09/26/2022

**These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.**

# Commercial Property Declarations



| Company: | Westchester Surplus Lines Insurance Company (A.M. Best Rating A++) | | |
|---|---|---|---|
| SYM: | FS | Policy ID: | FSF16203592 002 |

**Location**

| Loc. No. | Bld. No. | Address |
|---|---|---|
| 1 | 1 | 1500 Maple Ave, Melbourne, FL  32935 |

**Coverages and Limits Provided**

Insurance at Described Location Applies Only for Coverage for Which a Limit of Insurance is shown

| Loc. No. | Bld. No. | Coverage | Rate | Limit of Insurance$ | Premium |
|---|---|---|---|---|---|
| 1 | 1 | Building | 0.867 | $1,900,000 | $16,473 |
| 1 | 1 | Contents/BPP | 0.867 | $200,000 | $1,734 |
| 1 | 1 | Loss Payable Provisions | | N/A | 0 |
| | | | Total Advance Premium This Page : | | $18,207 |
| | | | Total Advance Property Premium : | | $18,207 |

**Coverage Options**

**Deductible**

| *AOP:* $5,000 *Theft:* $5,000 | ☐ See Multiple Deductible Form | X See Windstorm Or Hail Deductible Form |
|---|---|---|

The Replacement Cost and Co-insurance or BI/EE Mo. Limit Of Indemnity options are provided when indicated by an entry below:

| Loc. No. | Bld. No. | Coverage | Covered Causes of Loss Form | Replacement Cost | Co-insurance % or BI/EE Mo. Limit Of Indemnity |
|---|---|---|---|---|---|
| 1 | 1 | Building | Special Including Theft | X | 80% |
| 1 | 1 | Contents/BPP | Special Including Theft | X | 80% |

☐    See attached Schedule AWB0103s

© Chubb. 2016. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc with its permission

# *Forms Schedule*

**Company:** Westchester Surplus Lines Insurance Company (A.M. Best Rating A++)
**SYM:** FS          Policy ID: FSF16203592 002

| **Policy Period** | When Coverage Begins: | 09/27/2022 | 12:01 A.M. Local Time At Named Insured's Address |
|---|---|---|---|
| | When Coverage Ends: | 09/27/2023 | 12:01 A.M. Local Time At Named Insured's Address |

| Form Number | Form Title |
|---|---|
| SL24680 (10/09) | FLORIDA SURPLUS LINES NOTIFICATION |
| SLPD (03/08) | SURPLUS LINES DECLARATIONS |
| AWB0102 (02/16) | COMMON POLICY DECLARATIONS |
| AWB0103 (02/16) | COMMERCIAL PROPERTY DECLARATIONS |
| CPfs2 (01/11) | FORMS SCHEDULE |
| ACE0204 (05/10) | FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION |
| ACE0210 (01/08) | NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT |
| ACE0359 (12/10) | EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION |
| ACE0421 (08/09) | PRE-EXISTING PROPERTY DAMAGE EXCLUSION |
| ACE0681 (10/11) | DEFINITION OF LOSS OCCURRENCE ENDORSEMENT |
| ACE0755 (02/13) | COMMERCIAL PROPERTY CONDITIONS |
| AWB0211 (02/16) | WINDSTORM OR HAIL DEDUCTIBLE |
| AWB0213 (10/15) | COSMETIC DAMAGE ROOF EXCLUSION |
| AWB0215 (10/15) | ACV ROOF LIMITATION FORM |
| CP0010 (10/12) | BUILDING AND PERSONAL PROPERTY  COVERAGE FORM |
| CP0140 (07/06) | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP0411 (10/12) | PROTECTIVE SAFEGUARDS |
| CP1030 (10/12) | CAUSES OF LOSS - SPECIAL FORM |
| CP1211 (10/00) | Burglary and Robbery Protective Safeguards |
| CP1218 (10/12) | LOSS PAYABLE PROVISIONS |
| ILP003 (07/05) | FLOOD COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| FA49317 (06/17) | ASBESTOS MATERIAL EXCLUSION |
| FA53914 (07/20) | MAINTENANCE OF HEAT CONDITION |
| ALL39844 (10/16) | CHUBB PRIVACY NOTICE |
| WSG084 (05/11) | SURPLUS LINES BROKER NOTICE |
| CP1075 (12/20) | CYBER INCIDENT EXCLUSION |
| TRIA24a (08/20) | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |
| ALL10750 (01/15) | TERRORISM EXCLUSION ENDORSEMENT |
| CP0125 (02/12) | FLORIDA CHANGES |
| IL0017 (11/98) | COMMON POLICY CONDITIONS |
| ALL20887 (10/06) | CHUBB PRODUCER COMPENSATION PRACTICES & POLICIES |
| ALL21101 (11/06) | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| ALL5X45 (11/96) | QUESTIONS ABOUT YOUR INSURANCE? |
| AWB0311 (02/16) | CLAIMS DIRECTORY |
| AWB0310 (09/15) | MINIMUM EARNED PREMIUM ENDORSEMENT |
| SL44730a (01/16) | SERVICE OF SUIT ENDORSEMENT - FLORIDA |
| ILP001 (01/04) | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL  (OFAC)  ADVISORY NOTICE TO POLICYHOLDERS |

**FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION**

| Named Insured | Endorsement Number |
|---|---|
| Southeastern Seaproducts Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF16203592 002 | 09-27-2022 To 09-27-2023 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

A. The following exclusion is added:

We will not pay for loss, or physical loss or damage, caused directly or indirectly by any of the following. Such loss or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss, or physical loss or damage:

1. Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus" wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the loss caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3. The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B. The following are added to the Definitions:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

"Specified cause of loss" means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement may be attached to a coverage form or an endorsement with a different definition from the listed definitions. If there is a different definition, that definition does not apply to this endorsement.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Southeastern Seaproducts Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF16203592 002 | 09-27-2022 To 09-27-2023 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

A.  Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or ra-dioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B.  Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

C.  If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to *Loss*.

ACE0210 (01/08)                    .© Chubb. 2016. All rights reserved.                    **Page 1 of 1**

## EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Southeastern Seaproducts Inc | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | FSF16203592 002 | 09-27-2022 To 09-27-2023 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

This policy does not insure against loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Loss or damage by sprinkler leakage caused directly by earthquake, earth movement or volcanic eruption.

<u>Definitions</u>

Sprinkler leakage means:

A.    Leakage or discharge of water or other substances from within any automatic sprinkler system, or

B.    Direct loss caused by collapse or fall of a tank forming a part of such system.

Automatic sprinkler system means:

Any automatic fire protective system including sprinklers, discharge nozzles and ducts, pipes, valves, fittings, tanks (including their component parts and supports), pumps and private fire protection mains, all connected with and constituting a part of an automatic protective system; and non-automatic fire protective systems, hydrants, standpipes or outlets supplied from an automatic fire protective system.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

## PRE-EXISTING PROPERTY DAMAGE EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Southeastern Seaproducts Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF16203592 002 | 09-27-2022 To 09-27-2023 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**PROPERTY COVERAGE PART**

**INLAND MARINE COVERAGE PART**

This policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.

## DEFINITION OF LOSS OCCURRENCE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Southeastern Seaproducts Inc | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | FSF16203592 002 | 09-27-2022   To   09-27-2023 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following definition is added to this policy; supersedes any other definition, express or implied, of the term "Loss Occurrence" in any term, provision or endorsement to this policy; and applies not withstanding such term, provision or endorsement:

1.    "Loss Occurrence" means the sum of all individual losses arising out of and directly caused by any one disaster, accident or loss or series of disasters, accidents or losses arising out of one event which occurs anywhere within the Coverage Territory.  The duration and extent of any one Loss Occurrence will be limited to all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly caused by the same event, except:

A.    As regards Windstorm (including Tier 1 Counties), Flood, Hail or Tornado, including ensuing collapse, Flood and Water Damage: all individual losses sustained by the Insured occurring during any period of 96 consecutive hours arising out of and directly caused by the same event.

B.    As regards the perils of riot, strike or civil commotion, vandalism and malicious mischief, including losses from all other perils covered hereunder following as a result of the aforesaid perils: all losses or series of losses occurring during any period of 72 consecutive hours arising out of and directly caused by the same event. The maximum duration of 72 consecutive hours may be extended in respect of individual losses which occur beyond such 72 consecutive hours during the continued occupation of the Insured's premises by strikers, provided such occupation commenced during the aforesaid period.

C.    As regards the peril of Earthquake, including losses from all other perils covered hereunder following as a result of Earthquake: only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Loss Occurrence.

D.    As regards the peril of freeze: only those individual losses directly caused by collapse, breakage of glass, water and/or liquid damage due to burst pipes tanks or pressure vessels; damage to machinery or equipment, stock and/or work in progress due to freeze; and/or individual losses arising directly out of the lack of supply of power, current, coolant and/or fuel due to frozen pipes and/or frozen feed lines may be included in the Loss Occurrence.

Except for those Loss Occurrences referred to in sub-paragraphs A. and B. above, the Insured may chose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of consecutive hours will apply with respect to one event.

However, as respects those Loss Occurrences referred to in sub-paragraphs A. and B. above, if the disaster, accident or loss occasioned by the event is of greater duration than the specified period of consecutive hours, then the Insured may divide that disaster, accident or loss into two or more Loss Occurrences, provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising from that disaster, accident or loss.

© Chubb. 2016. All rights reserved.

However, we shall not be liable hereunder for any loss or damage:

a) Occurring before this policy becomes effective; or

b) Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

c) Occurring after the expiration of this policy, except loss or damage arising from an "occurrence" in progress at the time this policy expires.


This provision in no way alters any Policy Limit of Liability or Sub-limit of Liability.


All other terms and conditions remain unchanged.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions); and

**b.** Puerto Rico.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Chubb. 2016. All rights reserved.

ACE0755 (02/13)

Page 1 of 2

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Chubb. 2016. All rights reserved.

ACE0755 (02/13)

Page 2 of 2

# WINDSTORM OR HAIL DEDUCTIBLE FORM

| Named Insured<br>Southeastern Seaproducts Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF16203592 002 | Policy Period<br>09-27-2022 To 09-27-2023 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>WestchesterSurplusLines | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

| Minimum Dollar Deductible $5000 | | | Per Occurrence (applicable with a Percentage Deductible) | | |
|---|---|---|---|---|---|
| Location # | Building # | Percentage or Dollar Deductible | Applicable to "Named Storm" Only | | Applicable to "Hawaii Hurricane" Only |
| 1 | 1 | 5% | ☐ Yes ☒ No | | ☐ Yes ☒ No |

With respect to loss or damage caused directly or indirectly by:

1. Windstorm or hail, or
2. Rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains windstorm or hail damage to its roof or walls through which the rain enters,

the Deductibles shown in the Schedule above replace any other applicable deductible.

Each location deductible shown in the Schedule above applies separately to such location, regardless of the number of locations that suffer loss or damage.

© Chubb. 2016. All rights reserved.

Filing 225545023                    VS                    05-2025-CA-034840-XXCA-BC

**A. Calculation of Percentage Deductible:**

If the applicable deductible for a location is shown as a percentage, for each windstorm or hail occurrence, the deductible for such location will be calculated and applied separately to:

1. Each building or structure;

2. The contents in or on each building or structure;

3. Personal Property in the open;

4. Business Income/Extra Expense and/or Rental Value; and

5. All other covered items.

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the applicable Percentage Deductible, shown in the Schedule above, to each value listed in the most recent Schedule Of Values, for each covered item that has sustained loss or damage and for which a claim is being made under this policy.

If a covered item is not included in the most recent Schedule Of Values, the total values of such covered item at the time of loss and at the location that suffered loss or damage will be used.

In no event will the deductible amount determined above be less than the applicable Minimum Dollar Deductible shown in the Schedule above.

**B. Calculation of Dollar Deductible:**

If the applicable deductible for a location is shown in dollars, for each windstorm or hail occurrence, in determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the applicable Dollar Deductible shown in the Schedule above from the total amount of loss or damage at such location. This Dollar Deductible does not apply to Extra Expense.

C. The deductibles calculated above apply after any reduction required by the coinsurance condition, if applicable.

D. If coverage is provided for Business Income, the deductibles calculated above apply in addition to the 72 hour waiting period as stated in Form CP 0030 "Business Income (and Extra Expense) Coverage Form" or Form CP 0032 "Business Income (without Extra Expense) Coverage Form" as regards to loss or damage described above.

E. If indicated in the Schedule above, the provisions of this endorsement apply only to "Named Storms" or "Hawaii Hurricanes" as defined in the Named Storm Deductible And Named Storm Definition Endorsement, form ACE0244 or the Hawaii Hurricane Definition And Hawaii Hurricane Deductible Endorsement, form ACE0249 attached to this policy.

All other terms and conditions remain unchanged.

AWB0211 (02/16)

© Chubb. 2016. All rights reserved.

Filing 225545023                              VS                              05-2025-CA-034840-XXCA-BC

# COSMETIC DAMAGE ROOF EXCLUSION

| Named Insured<br>Southeastern Seaproducts Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF16203592 002 | Policy Period<br>09-27-2022 To 09-27-2023 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

All other terms and conditions remain unchanged.

AWB0213 (10/15)

© Chubb. 2016. All rights reserved.

Page 1 of 1

1

# ACTUAL CASH VALUE ROOF LIMITATION FORM

| Named Insured | Endorsement Number |
|---|---|
| Southeastern Seaproducts Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF16203592 002 | 09-27-2022 To 09-27-2023 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule above:

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

All other terms and conditions of this policy remain unchanged.

AWB0215 (10/15)  © Chubb. 2016. All rights reserved.  Page 1 of 1

1

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

      **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

    VS    © Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land and water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

   (a) You were required to comply with before the loss, even when the building was undamaged; and

   (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

   (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

   (a) We will not pay for the Increased Cost of Construction:

      (i) Until the property is actually repaired or replaced at the same or another premises; and

      (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss — Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss — Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---|---|
| $ 60,100 | |
| – 250 | |
| $ 59,850 | Loss Payable – Building 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $   40,000 |

**Step (1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):** $100,000 ÷ $200,000 = .50

**Step (3):** $40,000 x .50 = $20,000

**Step (4):** $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:  The value of the property is:

| | |
|---|---|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is: 90%

| | |
|---|---|
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $ 1,000 |

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is: $ 100,000

The annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is: $100,000 x .08 x 146 ÷ 365 = $ 3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

POLICY NUMBER: FSF16203592 002

**COMMERCIAL PROPERTY**
**CP 04 11 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | Building #1 | P-9 |

**Describe Any "P-9" And Additional P-9 Wording:**
**1   Building #1  P-9 Wording: Functioning and operating smoke detectors in all units and/or occupancies.**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

© Copyright, Insurance Services Office, Inc.,  1997

Filing 2025-05-013                                              05-2025-CA-031401-XXXX-BC

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Copyright, Insurance Services Office, Inc.,  2011

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

     VS     © Insurance Services Office, Inc., 2011     05-2025     TX FR-BC

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

  **(a)** Damage or destruction of "finished stock"; or

  **(b)** The time required to reproduce "finished stock".

  This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

  **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

  **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

  **(a)** Your cancelling the lease;

  **(b)** The suspension, lapse or cancellation of any license; or

  **(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

  **(a)** Paragraph **B.1.a.** Ordinance Or Law;

  **(b)** Paragraph **B.1.c.** Governmental Action;

  **(c)** Paragraph **B.1.d.** Nuclear Hazard;

  **(d)** Paragraph **B.1.e.** Utility Services; and

  **(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

  **(a) Contractual Liability**

  We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

    **(i)** Your assumption of liability was executed prior to the accident; and

    **(ii)** The building is Covered Property under this Coverage Form.

  **(b) Nuclear Hazard**

  We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.;**

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

POLICY NUMBER: FSF16203592 002

COMMERCIAL PROPERTY
CP 12 11 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE\***

| Premises No. | Building No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | BR-1 |

| Describe any "BR-4": |
|---|

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The following is added to the **Commercial Property** Conditions:

**BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

**1.** As a condition of this insurance, you are required to maintain the protective devices and/or services listed in the Schedule above.

**2.** The protective safeguard(s) to which this endorsement applies are identified by the following symbols:

**a.** "BR-1" Automatic Burglary Alarm, protecting the entire building, that signals to:

**(1)** An outside central station; or

**(2)** A police station.

**b.** "BR-2" Automatic Burglary Alarm, protecting the entire building, that has a loud sounding gong or siren on the outside of the building.

**c.** "BR-3" Security Service, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**d.** "BR-4" The protective safeguard described in the Schedule.

**B.** The following is added to the **Exclusions** section of the Causes Of Loss – Special Form:

**BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

Filing 2025146408     05-2025-PA 023460 XXCA-DC

POLICY NUMBER: FSF16203592 002

**COMMERCIAL PROPERTY**
**CP 12 18 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Location Number: 1 | Building Number: 1 | Applicable Clause (Enter C.1., C.2., C.3. or C.4.): | C2 |
|---|---|---|---|
| **Description Of Property:** Seafood Distributor | | | |
| **Loss Payee Name:** Florida Credit Union | | | |
| **Loss Payee Address:** PO BOX 5549, Gainesville FL 32627 | | | |
| Location Number: | Building Number: | Applicable Clause (Enter C.1., C.2., C.3. or C.4.): | C1 |
| **Description Of Property:** | | | |
| **Loss Payee Name:** | | | |
| **Loss Payee Address:** | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**(1)** Warehouse receipts;

**(2)** A contract for deed;

**(3)** Bills of lading;

**(4)** Financing statements; or

**(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**(1)** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**3. Contract Of Sale Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

**b.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**(1)** Adjust losses with you; and

**(2)** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**c.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**4. Building Owner Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

**b.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**c.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

IL P 003 07 05

# FLOOD COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

THIS POLICY DOES NOT COVER DAMAGE FROM FLOOD.

FOR INFORMATION ABOUT FLOOD INSURANCE, PLEASE CONTACT THE NATIONAL FLOOD INSURANCE PROGRAM OR YOUR INSURANCE AGENT.

# ASBESTOS MATERIAL EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**This endorsement modifies insurance provided under the following:**
**COMMERCIAL PROPERTY COVERAGE PART**

The following supersedes the terms and conditions of this Coverage Part. We will not pay for:

1) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; or

2) Any government direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

_____
Authorized Representative



*Westchester*
A Chubb Company

## MAINTENANCE OF HEAT CONDITION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Southeastern Seaproducts Inc | | | FA539140720 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| SEL | FSF16203592 002 | 09-27-2022 **to** 09-27-2023 | 09-27-2022 |
| Issued By (Name of Insurance Company) | | | |
| WestchesterSurplusLines | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL PROPERTY COVERAGE PART**

It is a condition of this policy that the Insured, in order to prevent freezing of plumbing, heating or fire protective systems, shall either:

1. Maintain heat in the buildings and other structures covered under this policy under the control of the Insured to a minimum of 60 degrees Fahrenheit, or

2. Drain all of the plumbing, heating and fire protective-related pipes within the buildings and other structures covered under this policy under the control of the Insured and fill them with antifreeze.

Failure to comply with this condition shall void coverage for any loss caused by or resulting from, directly or indirectly, the freezing of plumbing, heating or fire protective systems.

All other terms and conditions remain unchanged.

_____
Authorized Representative

**CHUBB®**

**CHUBB GROUP
U.S. PRIVACY NOTICE**

| FACTS | WHAT DOES THE CHUBB GROUP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Insurance companies choose how they share your personal information. Federal and state law gives consumers the right to limit some but not all sharing. Federal and state law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br><br>▪ Social Security number and payment history<br>▪ insurance claim history and medical information<br>▪ account transactions and credit scores<br><br>When you are no longer our customer, we continue to share information about you as described in this notice. |
| **How?** | All insurance companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons insurance companies can share their customers' personal information; the reasons the Chubb Group chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chubb share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |
| **Questions?** | Call **1-800-258-2930** or go to https://www2.Chubb.com/us-en/privacy.aspx | |

| Page 2 | |
|---|---|
| **Who is providing this notice?** | The Chubb Group. A list of these companies is located at the end of this document. |

## What we do

| | |
|---|---|
| **How does Chubb Group protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We restrict access to personal information to our employees, affiliates' employees, or others who need to know that information to service the account or to conduct our normal business operations. |
| **How does Chubb Group collect my personal information?** | We collect your personal information, for example, when you<br><br>- apply for insurance or pay insurance premiums<br>- file an insurance claim or provide account information<br>- give us your contact information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>- sharing for affiliates' everyday business purposes – information about your creditworthiness<br>- affiliates from using your information to market to you<br>- sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>- Our affiliates include those with a Chubb name and financial companies, such as Westchester Fire Insurance Company and Great Northern Insurance Company, |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>- Chubb does not share with nonaffiliates so they can market to you. |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>- Our joint marketing partners include categories of companies such as banks. |

| Page 3 | |
|---|---|

## Other important information

**For Insurance Customers in AZ, CA, CT, GA, IL, MA, ME, MN, MT, NV, NC, NJ, OH, OR, and VA only:** Under state law, you have the right see the personal information about you that we have on file. To see your information, write Chubb Group Attention: Privacy Inquiries, 202 Hall's Mill Road, P.O. Box 1600, Whitehouse Station, NJ 08889-1600. Chubb may charge a reasonable fee to cover the costs of providing this information. If you think any of the information is not accurate, you may write us. We will let you know what actions we take. If you do not agree with our actions, you may send us a statement. If you want a full description of privacy rights that we will protect in accordance with the law in your home state, please contact us and we will provide it. We may disclose information to certain third parties, such as law enforcement officers, without your permission.

**For Nevada residents only:** We may contact our existing customers by telephone to offer additional insurance products that we believe may be of interest to you. Under state law, you have the right to opt out of these calls by adding your name to our internal do-not-call list. To opt out of these calls, or for more information about your opt out rights, please contact our customer service department. You can reach us by calling 1-800-258-2930, emailing us at privacyinquiries@Chubb.com, or writing to Chubb Group, Attention: Privacy Inquiries, 202 Hall's Mill Road, P.O. Box 1600, Whitehouse Station, NJ.08889-1600. You are being provided this notice under Nevada state law. In addition to contacting Chubb, Nevada residents can contact the Nevada Attorney General for more information about your opt out rights by calling 775-684-1100, emailing bcpinfo@ag.state.nv.us, or by writing to: Office of the Attorney General, Nevada Department of Justice, Bureau of Consumer Protection: 100 North Carson Street, Carson City, NV 89701.

**For Vermont residents only:** Under state law, we will not share information about your creditworthiness within our corporate family except with your authorization or consent, but we may share information about our transactions or experiences with you within our corporate family without your consent.

## Chubb Group Companies Providing This Notice

This notice is being provided by the following Chubb Group companies to their customers located in the United States: ACE American Insurance Company, ACE Capital Title Reinsurance Company, ACE Fire Underwriters Insurance Company, ACE Insurance Company of the Midwest, ACE Life Insurance Company, ACE Property and Casualty Insurance Company, Agri General Insurance Company, Atlantic Employers Insurance Company, Bankers Standard Fire and Marine Company, Bankers Standard Insurance Company, Century Indemnity Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Chubb Insurance Company of New Jersey, Chubb Lloyds Insurance Company of Texas, Chubb National Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Pacific Employers Insurance Company, Pacific Indemnity Company, Penn Millers Insurance Company, Texas Pacific Indemnity Company, Vigilant Insurance Company, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company.

# *Westchester Surplus Lines Insurance Company*

**INSURANCE COMPANY**

11575 Great Oaks Way
Suite 200
Alpharetta, GA 30022

# NOTICE

POLICY NO: FSF16203592 002
NAME OF INSURED: Southeastern Seaproducts Inc
ADDRESS: 1500 Maple Ave
                   Melbourne, FL 32935

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date: <u>09-26-2022</u>

COMMERCIAL PROPERTY
CP 10 75 12 20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**



| | |
|---|---|
| Westchester Surplus Lines Insurance Company | |
| Insurance Company | |
| Southeastern Seaproducts Inc | |
| Policyholder | |
| FSF16203592 002 | |
| Policy Number | |
| BASS UNDERWRITERS INC | |
| Broker/Producer | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected ***NOT*** to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL ***NOT*** PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $1,639, however you elected to decline such coverage.

## TERRORISM EXCLUSION ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Southeastern Seaproducts Inc | | | | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| FS | FSF16203592 002 | 09-27-2022    To    09-27-2023 | | |
| Issued By (Name of Insurance Company) | | | | |
| Westchester Surplus Lines Insurance Company | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY**

The following exclusion is added to this policy and applies to all coverages, additional coverages, and coverage extensions, notwithstanding any provision to the contrary in this policy or any other endorsement hereto:

A.  This insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence thereto:

    1.  "Act of Terrorism"; or

    2.  Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism; or

    3.  dispersal, application, or release of any actual or alleged pathogen, poison, biologic or chemical product, material, waste or substance as a result of an Act of Terrorism, and it reasonably appears that one purpose of the Act of Terrorism was to release such product, material, waste or substance.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

The terms and limitations of this exclusion do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as, but not limited to, losses excluded by the "Nuclear Exclusion" or the "War Exclusion" or similar provision.

B.  As used in this endorsement:

    1.  "Act of Terrorism" means any act against persons, organizations or property of any nature that involves the following or preparation for the following:

        a.  Use or threat of force or violence; or

        b.  Commission or threat of a dangerous act; or

        c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

© Chubb. 2016. All rights reserved.

VS  05-2025-CA-034840-XXCA-BC

2.  Appears to be intended, in whole or in part, to:

   a.  Intimidate or coerce a government or the civilian population; or

   b.  Disrupt any segment of a nation's economy; or

   c.  Influence the policy of a government by intimidation or coercion; or

   d.  Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

   e.  Further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

   f.  Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

C.  Exception Covering Certain Fire Losses

If an Act of Terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy, to the lesser of the actual cash value of the property at the time of the loss or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

Filing 225545023                    VS                    05-2025-CA-034840-XXCA-BC

COMMERCIAL PROPERTY
CP 01 25 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

**a.** Indian River; and

**b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

**(a)** A claim under a policy covering residential property;

**(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

(c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

## E. Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

1. In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

2. In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

3. In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

## F. The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

G. The following applies to the **Additional Coverage – Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

**(1)** A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

**(2)** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**I.** The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

**1.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**2.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**3.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**4.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**5.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 05-2025-CA-094840-XXCA-BC □



## Chubb Producer Compensation
## Practices & Policies

Chubb believes that policyholders should have access to information about Chubb'spractices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured Southeastern Seaproducts Inc | | | | Endorsement Number |
|---|---|---|---|---|
| Policy Symbol CP | Policy Number FSF16203592 002 | Policy Period 09-27-2022 | to 09-27-2023 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) Westchester Surplus Lines Insurance Company | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.

Page 1 of 1



# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.



# Claims Directory

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb North American Claims | First Notices Email: ChubbClaimsFirstNotice@Chubb.com<br><br>First Notices Fax:<br>    215-640-5041 or<br>    1-877-395-0310<br>General Correspondence Fax:<br>    1-866-635-5688 | P.O. Box 5122 Scranton, PA 18505-0554 |

© Chubb. 2016. All rights reserved.

Filing 225545023                    VS                    05-2025-CA-034840-XXCA-BC

# MINIMUM EARNED PREMIUM ENDORSEMENT

| Named Insured<br>Southeastern Seaproducts Inc | | | Endorsement Number | |
|---|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF16203592 002 | Policy Period<br>09-27-2022 to 09-27-2023 | Effective Date of Endorsement | |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **Section** IV - **Conditions:**

**Cancellation by You; Minimum Earned Premium**

If this policy is cancelled at your request, there will be a minimum earned premium retained by us, determined as follows:

    (i)  Minimum Earned Premium at inception: $ _____ , or

    (ii)  Minimum Earned Premium at inception:  25% of Policy Term Premium

whichever is greater.

All other terms and conditions of this policy remain unchanged.

AWB0310 (09-15)

© Chubb. 2016. All rights reserved.

Page 1 of 1

Filing 225545023

VS

05-2025-CA-034840-XXCA-BC

# SERVICE OF SUIT ENDORSEMENT - FLORIDA

| Named Insured<br>Southeastern Seaproducts Inc | | | | Endorsement Number |
|---|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF16203592 002 | Policy Period<br>09-27-2022 | to 09-27-2023 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Chief Financial Officer of the State of Florida
> Department of Financial Services
> 200 E. Gaines Street
> Tallahassee, FL 32399

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

Florida law requires that the Chief Financial Officer of the State of Florida be designated as the company's agent for service of process. In Florida the company designates the Chief Financial Officer as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Chief Financial Officer to mail process received on the company's behalf to the company person named below.

> Mr. Paul Bech, Esq., Associate General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**CHUBB**®                                                                    EXHIBIT B

January 26, 2024

**Southeastern Seaproducts Inc**
**1500 Maple Ave**
**Melbourne, FL 32935**

RE:     Insured:                 Southeastern Seaproducts Inc
        Location of Loss:        **1500 Maple Ave, Melbourne, FL 32935**
        Nature of Loss:          Hail/Wind
        Date of Loss:            April 26, 2023
        Policy Number:           F16203592-002
        Claim Number:            **KY23K2874003**
        Writing Company:         Westchester Surplus Lines Insurance

To Whom it May Concern:

Thank you for submitting your Wind and Hail damage claim for the above referenced
location.  Westchester Surplus Insurance Company ("Chubb") has completed its factual
investigation given the information provided and offers the following comments with
respect to coverage for this loss.

**<u>The Loss</u>**

We are in receipt of a claim for reported wind and hail damages to your building's roof
located at 1500 Maple Ave, Melbourne, FL 32935.  As you are aware, we engaged the
services of Independent Adjusters, Mr. Mike Fichtelberg and Mr. George Graham with
Crawford and Company, to assist in our investigation by completing a physical
inspection of the property.

Additionally, we retained Geoffrey Trent VanAllen of Stephens Engineering Consultants,
and Jermaine McFarlane of JS Held Construction Consultants, to assist the investigation
of the cause of loss and preparation of an estimate of repairs in line with the engineer's
findings.

Our expert's investigations included an on-site interior and exterior inspection of your
premises on September 28, 2023, and October 27, 2023 with you. The following
conclusions were determined by the engineer:

***Based on the inspection of the subject property, research, and/or review of provided
documents, the following conclusions are provided:***

❑ ***Evidence of hailfall due to both recent and historical hail events were observed on
the vulnerable elements on the property (detailed herein).***

❏ *Stephens's inspection revealed no fractures and/or punctures in the membrane that were consistent with hailfall on the low-sloped roof sections over the building.*

❏ *Any hail that had recently and/or historically fallen on the subject property was of insufficient mass and velocity to have caused damage to the roofing.*

❏ *Stephens's inspection revealed no areas of torn or missing thermoplastic membrane consistent with wind-related damage on the low-sloped roof section over the building.*

❏ *Stephens's investigation revealed approximately 91 membrane patches that lacked weathering at areas which appeared to have been recently cleaned consistent with recent remedial repairs. The location of the recent remedial repairs have been included in the roof diagram included as Appendix C. Based on the observed scuff marks on the membrane proximate to the recent remedial repairs as well as the missing and/or displaced metal housing for various roof-mounted HVAC condenser units, Stephens cannot rule out that recent remedial repairs were due to impact related damage from wind-borne debris on or about the reported date of loss. At the time of Stephens's inspection the repairs to the roofing had already been completed, and no further repairs appeared to be required.*

❏ *The contractor reported and/or Stephens's inspection of the roof revealed various conditions to the roof-mounted HVAC condenser units which are detailed in the Roof-Mounted HVAC Condenser Units section.*

❏ *Stephens cannot rule out moisture intrusion due to the impact-related damage from the wind-borne debris to the roofing. Since the roofing had already been repaired, Stephens was unable to substantiate the extent of the moisture intrusion. The observed rusted areas on the metal roof decking as well as the dark-moisture-stained and rusted areas at the refrigerated area were the result of historical exposure and/or long-term exposure to the elements and was not consistent with moisture intrusion originating on or about the reported date of loss.*

❏ *Various other conditions and/or damage, detailed herein, were attributable to causes other than hail.*

## **The Policy**

Westchester Surplus Insurance Company ("Chubb") issued Policy No. F16203592 002 to **Southeastern Seaproducts Inc**, with the effective dates of coverage September 27, 2022, through September 27, 2023.  Coverage is written on a **CP 00 10 10 12 – BUILDING AND PERSONAL PROPERTY COVERAGE FORM** and endorsed with the CP **10 30 10 12 – CAUSES OF LOSS – SPECIAL FORM**, which provides a building limit of $1,900,000.00, a Contents/Business Personal Property limit of

$200,000.00, along with a standard $5,000 deductible per occurrence/per building, a 5% ($95,000.00) Windstorm or Hail deductible.  Coverage is subject to the term and conditions of the policy.

**Analysis of Policy Provisions Relevant to Claim**

Please refer to the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM (CP 00 10 10 12)** for the following pertinent excerpts:

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

…

### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

…

### 3. Duties In The Event Of Loss Or Damage

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

   **(1)** Notify the police if a law may have been broken.

   **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

   **(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

   **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.  However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

...

Next, please refer to the **CP 10 30 10 12 CAUSES OF LOSS – SPECIAL FORM** for the following pertinent excerpts:

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

...

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**d. (1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the building or structure; or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

...

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

  **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

  **c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

...

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or Damage as described and limited in this section.

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

…

Next, please refer to the **ACE0204 (05/10) FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION**

Λ. The following exclusion is added:

We will not pay for loss, or physical loss or damage, caused directly or indirectly by any of the following. Such loss or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss, or physical loss or damage:

1. Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus" wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the loss caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3. The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B. The following are added to the Definitions:
"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

…

Next, please refer to the **ACE0421 (08/09) PRE-EXISTING PROPERTY DAMAGE
EXCLUSION**

> This policy excludes any loss or damage directly or indirectly caused by, resulting from
> or contributed to by any pre-existing property damage at the time of loss.
> …

Next, please refer to the **ACE0681 (10/11) DEFINITION OF LOSS OCCURRENCE
ENDORSEMENT**

The following definition is added to this policy; supersedes any other definition, express
or implied, of the term "Loss Occurrence" in any term, provision or endorsement to this
policy; and applies not withstanding such term, provision or endorsement:

1. "Loss Occurrence" means the sum of all individual losses arising out of and directly
   caused by any one disaster, accident or loss or series of disasters, accidents or losses
   arising out of one event which occurs anywhere within the Coverage Territory. The
   duration and extent of any one Loss Occurrence will be limited to all individual losses
   sustained by the Insured occurring during any period of 72 consecutive hours arising
   out of and directly caused by the same event, except:

   A. As regards Windstorm (including Tier 1 Counties), Flood, Hail or Tornado,
      including ensuing collapse, Flood and Water Damage: all individual losses
      sustained by the Insured occurring during any period of 96 consecutive hours
      arising out of and directly caused by the same event.

   B. As regards the perils of riot, strike or civil commotion, vandalism and malicious
      mischief, including losses from all other perils covered hereunder following as a
      result of the aforesaid perils: all losses or series of losses occurring during any
      period of 72 consecutive hours arising out of and directly caused by the same event.
      The maximum duration of 72 consecutive hours may be extended in respect of
      individual losses which occur beyond such 72 consecutive hours during the
      continued occupation of the Insured's premises by strikers, provided such
      occupation commenced during the aforesaid period.

   C. As regards the peril of Earthquake, including losses from all other perils covered
      hereunder following as a result of Earthquake: only those individual losses covered
      hereunder, which commence during the period of 168 consecutive hours, may be
      included in the Loss Occurrence.

   D. As regards the peril of freeze: only those individual losses directly caused by
      collapse, breakage of glass, water and/or liquid damage due to burst pipes tanks or
      pressure vessels; damage to machinery or equipment, stock and/or work in progress
      due to freeze; and/or individual losses arising directly out of the lack of supply of

power, current, coolant and/or fuel due to frozen pipes and/or frozen feed lines may be included in the Loss Occurrence.

Except for those Loss Occurrences referred to in sub-paragraphs A. and B. above, the Insured may choose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of consecutive hours will apply with respect to one event.

However, as respects those Loss Occurrences referred to in sub-paragraphs A. and B. above, if the disaster, accident or loss occasioned by the event is of greater duration than the specified period of consecutive hours, then the Insured may divide that disaster, accident or loss into two or more Loss Occurrences, provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising from that disaster, accident or loss.

However, we shall not be liable hereunder for any loss or damage:
  a) Occurring before this policy becomes effective; or

  b) Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

  c) Occurring after the expiration of this policy, except loss or damage arising from an "occurrence" in progress at the time this policy expires.

This provision in no way alters any Policy Limit of Liability or Sub-limit of Liability.

All other terms and conditions remain unchanged.

…

Next, please refer to the **COSMETIC DAMAGE ROOF EXCLUSION - AWB0213 (10/15)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**
**COMMERCIAL PROPERTY COVERAGE PART**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

All other terms and conditions remain unchanged.
…

Next, please refer to the **ACTUAL CASH VALUE ROOF LIMITATION FORM - AWB0215 (10/15)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.   THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:
BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule above:

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

All other terms and conditions of this policy remain unchanged.

You are also directed to the endorsement **AWB0211 (02/16) WINDSTORM OR HAIL DEDUCTIBLE FORM**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING: COMMERCIAL PROPERTY COVERAGE PART**

| Minimum Dollar Deductible $5000 | | | Per Occurrence (applicable with a Percentage Deductible) | |
|---|---|---|---|---|
| Location # | Building # | Percentage or Dollar Deductible | Applicable to "Named Storm" Only | Applicable to "Hawaii Hurricane" Only |
| 1 | 1 | 5% | ☐ Yes ☒ No | ☐ Yes ☒ No |

With respect to loss or damage caused directly or indirectly by:

1. Windstorm or hail, or

2. Rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains windstorm or hail damage to its roof or walls through which the rain enters,

the Deductibles shown in the Schedule above replace any other applicable deductible.

Each location deductible shown in the Schedule above applies separately to such location, regardless of the number of locations that suffer loss or damage.

\*\*\*\*\*\*\*

Based upon the engineer findings, roof damages found to Building were both recent and pre-existing to this loss date. It was confirmed that no fractures and/or punctures to the roof membrane were consistent with hailfall. Additionally, any hail which had recently and/or historically fallen was of insufficient mass and velocity to cause damage to the roofing materials.

It was determined that the roof had 91 membrane patches applied prior to inspection, which lacked weathering indicating recent remedial repair. Stephens Engineering was unable to determine the cause/need for repair but could not rule out that the remedial repairs were due to impact related damage from wind-borne debris.

Additionally, various HVAC damages were discovered during the inspection.

As such, the policy includes exclusionary language which is applicable to this loss.

JS Held Construction Consultants has prepared an estimate of covered damages per engineering scope. Our estimate has a Replacement Cost Value of $37,551.52, less depreciation in the amount of $2,919.92, less the applicable $95,000.00 deductible, for a Net Claim Value of $0.00.

This letter only addresses those provisions that appear pertinent at this time in light of the facts currently known to us.  If there is any additional information that may affect our position or analysis, please forward such information. Chubb reserves all rights with regard to the above referenced provisions as well as all other rights, remedies and defenses under the Policy, at law and in equity.  Nothing contained in this letter, and no action on our part or the part of independent adjusters or experts retained on our behalf in investigating and adjusting your claim, should be construed as an admission of coverage or as a waiver of any right, remedy or defense that may be available to Chubb. If you require a copy of the policy, please contact our office and a copy will be provided to you.

For your protection, state law requires that we inform you of the following:  Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

If you have any questions or disagree with any aspect of the aforementioned, please do not hesitate to contact the undersigned immediately.

Sincerely,

**George Lasho**
Claim Director – Commercial Property Excess & Surplus
Florida License# E146594



1 Progress Point Parkway
O'Fallon, MO 63368
O 636-793-0594
E george.lasho@chubb.com

CC:

Bass Underwriters Inc
1005 S. Dillard Street
Winter Garden, FL 34787

Ask an Adjuster of Orlando, FL
Attn: Kim Toney
KMT@askanadjuster.com

# Sworn Statement in Proof of Loss

## Claim # KY23K2874003

$2,100,000
Amount Of Policy At Time Of Loss

Policy Number : FSF16203592 002

Date Issued: 09/27/2022

Agent Bass Underwriters INC

Date Expires: 09/27/2023

Agency Located

To __Westchester Surplus Lines Insurance Company/ Chubb__ . At the time of loss, by the above indicated policy of insurance, you insured: Southeastern Seaproducts Inc. against loss by Wind/Hail to the property located at 1500 Maple Ave, Melbourne, FL 32935 described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

**Time and Origin:** A loss occurred on or about 04/26/2023. The cause and origin of the said loss was Wind/Hail.

**Occupancy:** The building described, or containing the property described, was occupied at the time of loss as follows: __Residential.__

**Title and Interest:** No other person(s) had any interest therein or encumbrance thereon, except: __.

**Changes:** Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described except: **None.**

**Other Insurance** There **is not** other insurance which may cover this loss. (please circle one)

**Total:** The total amount of insurance upon the property described by this policy was, at the time of loss, stated in the policy. There is no policy or other interact of insurance, to the best of the knowledge of the undersigned, written or oral, valid or invalid which would affect said total amount of insurance stated in the policy.

**Loss:** The whole loss and damage was: $983,006.48*

**Deductible:** Less deductible: $5,000

**Amount Claimed:** The amount claimed under the above numbered policy is: $978,006.48 *

* The amount claimed is based on the opinion OR GUESS of the homeowner, or some other person whom the insured has relied on. Nevertheless, this amount may change based on contractor bids, material prices, the availability of the insured's contractor of choice, and other costs which are too numerous to mention and include but are not limited to insurance, permits, construction documents, state law, labor pool, acts of God, software costs and the cost of owner's representatives' time. The amount claimed may be affected by policy exclusions. All damages were included on this Proof because this represents "ALL" the damages. If there is an exclusion, the Insurance Company does not have to pay that portion of the loss any overlap, upgrade, or mistake which would result in additional costs is unintentional. Estimate (if one exists) includes costs associated with code upgrades if known. Any estimate or guess was not made with a set of plans created by a design professional but may include the costs of a design professional. Any plans made by a design professional would require approval by the local building inspector. Costs may change based on the building department approvals and means and methods acceptable to a general contractor. If the homeowner obtained any bids from third party contractors, the amount claimed may or may not include or consider such a bid as the bid may not be compatible, or the bid may not have been provided to the estimator(s) creating the estimate(s) or other such reasons. There is no intent to defraud any party.

1

**STATEMENT OF INSURED**: The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of this policy, or render it void; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof. The insured hereby covenants that no release has been or will be given to or settlement or compromise made with any third party who may be liable in damages to the insured. Nothing contained within this Proof of Loss is meant as a waiver of the insured's rights. The insured reserves all rights they may have under the insurance policy, including but not limited to supplementing their claim, and/or filing additional proofs of loss, should such cause arise. This proof of loss may not address hidden damages and does not include any unknown damages or complications or additional cost that may be associated with any repair/replacement of the damages to the insured property. The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

### STATEMENT OF LOSS AND DAMAGE

| | | RCV |
|---|---|---|
| Total Dwelling | | |
| | | $983,006.48* |
| Personal/Business Property (Attachment 2/Inventory if applicable) | | |
| Loss of Use/Rental Value Loss (Attachment 3/Records in Support of loss/Spreadsheet indicating additional expenses and loss of use if applicable) | As incurred | |
| | | |

INSURED: _Mark Maynard Jr_        INSURED: ___

By: _____        By: _____
Insured and/or Authorized Representative        Insured and/or Authorized Representative

The foregoing instrument was acknowledged before me, by means of ☒ physical presence or ☐ online notarization, this _2nd_ day of _May_, _2024_ (year), by Southeastern Seaproducts Inc. Similarly, for an instrument requiring an oath or affirmation, the relevant portion of the statutory certificate should read as follows:

State of _Florida_
County of _Brevard_

Date _5/2/24_                Notary Public

**TIFFANI HANLEY**
Notary Public
State of Florida
Comm# HH409814
Expires 6/13/2027

# Pursuant to s.817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information

2

**concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in s.775.082, s.775.803, or s.775.084, Florida Statutes.**

**The amounts herein are contingent upon the information available to the insured and may change upon discovery of new and/or previously undiscovered damages and/or new information.**

\* \* \* The amount claimed is based on the opinion OR GUESS of the homeowner, or some other person whom the insured has relied on. Nevertheless, this amount may change based on contractor bids, material prices, the availability of the insured's contractor of choice, and other costs which are too numerous to mention and include but are not limited to insurance, permits, construction documents, state law, labor pool, acts of God, software costs and the cost of owner's representatives' time. The amount claimed may be affected by policy exclusions. All damages were included on this Proof because this represents "ALL" the damages. If there is an exclusion, the Insurance Company does not have to pay that portion of the loss. Any overlap, upgrade, or mistake which would result in additional costs is unintentional. Estimate (if one exists) includes costs associated with code upgrades if known. Any estimate or guess was not made with a set of plans created by a design professional, but may include the costs of a design professional. Any plans made by a design professional would require approval by the local building inspector. Costs may change based on the building department approvals, and means and methods acceptable to a general contractor. If the homeowner obtained any bids from third party contractors, the amount claimed may or may not include or consider such a bid as the bid may not be compatible, or the bid may not have been provided to the estimator(s) creating the estimate(s) or other such reasons. There is no intent to defraud any party.

3

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

Insured: Southeastern Seaproducts Inc.
Property: 1500 Maple Avenue
Melbourne , FL 32935

Claim Rep.: Carrier Relations Department          Business: (321) 323-3209
Billing: 4450 W Eau Gallie Blvd Ste 120
Melbourne, FL 32934

Estimator: Carrier Relations Department          Business: (321) 323-3209
Billing: 4450 W Eau Gallie Blvd Ste 120
Melbourne, FL 32934

Reference:
Company: Westchester Surplus Lines

**Claim Number:** KY23K2874003      **Policy Number:** FSF16203592002      **Type of Loss:** hail and wind damage

Date of Loss: 4/26/2023 12:00 AM          Date Received:
Date Inspected:                           Date Entered:   9/25/2023 12:00 AM

Price List: FLME8X_MAR24
Restoration/Service/Remodel
Estimate: SOUTHEASTERNSEAPROD

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

Dear Insured Valued Client,

Please refer to the enclosed itemized estimate of repairs to your property located at 1500 Maple Avenue , Melbourne , FL 32935. This estimate was prepared using the most recent local cost database(s) available at time of estimate as well as any limited information available at the time of our inspection. If you choose to hire a contractor, please feel free to provide this estimate to them.

If any hidden or additional damage is discovered, please contact your representative immediately. Before any modification or adjustment of the attached estimate would be considered, coverage for the hidden or additional damages would need to be determined and may require an inspection. Please do not destroy or discard any of the hidden or additional damages until an agreement on the supplement costs for indemnification has been determined if estimate is being utilized in settlement of a claim. Photos should be taken of additional damage and provided to your representative along with any available receipts, invoices and/or canceled checks to evidence any temporary repairs to the property. The following estimate of damages is based on the limited information available and is subject to change as new information becomes evident.

Should you have any questions regarding this estimate, please contact your representative or our office using the information above.

NOTICE - Section 817.234, Florida Statutes, provide in part: "Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

### SOUTHEASTERNSEAPROD

### SKETCH1

### Roofing System

## HVAC & Plumbing

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| *Material Staging:* | | | | | | | |
| 1. Crane and operator - 14 ton capacity - 65' extension boom | 28.00 HR | 140.38 | 0.00 | 786.12 | 4,716.76 | (0.00) | 4,716.76 |
| Note: [PER UNIT] Two hours to remove and store HVAC unit, two hours to lift and reset each unit. | | | | | | | |
| 2. HVAC Technician - per hour | 28.00 HR | 114.30 | 0.00 | 640.08 | 3,840.48 | (0.00) | 3,840.48 |
| Note: One hour of technician labor to disconnect HVAC lines prior to removal and one hour of technician labor to prep materials and re-connect HVAC lines post project completion. | | | | | | | |
| *Commercial HVAC Units:* | | | | | | | |
| 3. Premier AC & Mechanical Inc - Invoice* | 1.00 EA | 27,885.50 | 0.00 | 0.00 | 27,885.50 | (5,577.10) | 22,308.40 |
| *Nitrogen System Replacement:* | | | | | | | |
| 4. INCRYO - material & labor invoice #050944* | 1.00 EA | 15,475.60 | 0.00 | 0.00 | 15,475.60 | (3,095.12) | 12,380.48 |
| *Aluminum HVAC Stands:* | | | | | | | |
| Note: Source [https://pipesupportexpress.com/heavy-duty-aluma-stand-roof-top-air-conditioning-stand?gad_source=1&gclid=Cj0KCQiAmNeqBhD4ARIsADsYfTeiSC6dfW_RX88JR8bg9gGdM_VrQ8BJB0PVtettlINGubNS0aNSdLoaAkA4EALw_wcB] | | | | | | | |
| 5. Aluma Stand - 3"*24"* | 1.00 EA | 140.23 | 0.00 | 0.00 | 140.23 | (28.05) | 112.18 |
| 6. Aluma Stand - 6"*24"* | 2.00 EA | 185.23 | 0.00 | 0.00 | 370.46 | (74.09) | 296.37 |
| 7. Aluma Stand - 9"*24"* | 1.00 EA | 277.84 | 0.00 | 0.00 | 277.84 | (55.57) | 222.27 |
| 8. Aluma Stand - 12"*24"* | 3.00 EA | 370.46 | 0.00 | 0.00 | 1,111.38 | (222.28) | 889.10 |
| 9. Aluma Stand - 15"*24"* | 1.00 EA | 463.07 | 0.00 | 0.00 | 463.07 | (92.61) | 370.46 |
| 10. R&R HVAC stand boot flashing - PVC/TPO* | 94.00 EA | 87.59 | 259.78 | 1,646.70 | 10,139.94 | (742.22) | 9,397.72 |
| *Evacuation and Refrigerant:* | | | | | | | |
| 11. R&R Refrigerant lineset - 3/8" x 3/4" tubing - up to 30' | 10.00 EA | 367.15 | 114.79 | 734.30 | 4,520.59 | (327.96) | 4,192.63 |
| 12. Central air cond. system - refrigerant evacuation | 14.00 EA | 167.22 | 0.00 | 468.22 | 2,809.30 | (0.00) | 2,809.30 |
| The EPA requires a licensed technician to perform this task and recover the refrigerant due to ozone regulations. See link below | | | | | | | |
| https://www.epa.gov/section608/revised-section-608-refrigerant-management-regulations | | | | | | | |
| 13. Central air cond. system - recharge - 10lb refrigerant | 14.00 EA | 298.78 | 185.82 | 836.58 | 5,205.32 | (530.91) | 4,674.41 |
| Note: The rule of thumb is two to four pounds of refrigerant per one ton of your unit. You should always check the specifications of your unit. However, most home air conditioning units are between one ton and five tons. Anything over five tons is considered a commercial grade unit. | | | | | | | |
| *Drainage Lines:* | | | | | | | |
| 14. HVAC Technician - per hour | 8.00 HR | 114.30 | 0.00 | 182.88 | 1,097.28 | (0.00) | 1,097.28 |
| Note: Technician labor to install condensate drainage lines | | | | | | | |

SOUTHEASTERNSEAPROD

3/11/2024                    Page: 3

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## CONTINUED - HVAC & Plumbing

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| ***Exhaust Fan & Ductwork:*** | | | | | | | |
| 15. R&R Exhaust fan - cone style 36" 6 blade, galvanized | 3.00 EA | 2,015.08 | 271.61 | 1,209.04 | 7,525.89 | (776.03) | 6,749.86 |
| 16. R&R Ductwork - spiral - 16" diameter - 24 gauge | 30.00 LF | 35.88 | 35.28 | 215.28 | 1,326.96 | (100.80) | 1,226.16 |
| 17. R&R Ductwork - spiral - 14" diameter - 26 gauge | 21.50 LF | 29.94 | 19.84 | 128.76 | 792.31 | (56.67) | 735.64 |
| ***Conduit:*** | | | | | | | |
| 18. R&R Rigid conduit, 2" | 52.67 LF | 34.40 | 40.63 | 362.38 | 2,214.86 | (116.08) | 2,098.78 |
| 19. R&R Rigid conduit, 1" | 141.00 LF | 20.06 | 53.59 | 565.70 | 3,447.75 | (153.13) | 3,294.62 |
| **Totals: HVAC & Plumbing** | | | **981.34** | **7,776.04** | **93,361.52** | **11,948.62** | **81,412.90** |



## TPO Roofing System

21053.13  Surface Area          210.53  Number of Squares
651.93  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| ***Thermoplastic Polyolefin Roofing System:*** | | | | | | | |
| **Note: See attached doc coded (Commercial Roofing, TPO...)** | | | | | | | |
| 20. Tear off membrane roofing - fully adhered (no haul off) | 211.21 SQ | 82.85 | 0.00 | 3,499.76 | 20,998.51 | (0.00) | 20,998.51 |
| 21. R&R Metal decking, 1 1/2" 16 gauge galvanized - 'B' | 1,280.00 SF | 10.75 | 370.94 | 2,752.00 | 16,882.94 | (1,059.84) | 15,823.10 |
| 22. Roofer - per hour | 32.00 HR | 192.88 | 0.00 | 1,234.44 | 7,406.60 | (0.00) | 7,406.60 |
| **Note: Labor to inspect existing decking attachment to purlins.** | | | | | | | |
| 23. Elastomeric roof primer | 21,121.00 SF | 0.80 | 680.10 | 3,379.36 | 20,956.26 | (1,943.13) | 19,013.13 |
| **Note: Vapor barrier/retarder** | | | | | | | |
| 24. R&R Insulation - perlite board, 1-1/2" | 211.21 SQ | 381.63 | 1,853.26 | 16,120.82 | 98,578.15 | (5,295.03) | 93,283.12 |
| **Note: See attached doc coded (Roofing 6)** | | | | | | | |
| 25. R&R Insulation - ISO board, 1 1/2" | 211.21 SQ | 354.65 | 1,482.02 | 14,981.12 | 91,368.77 | (4,234.34) | 87,134.43 |
| 26. R&R Single ply membrane - Mechanically attached - 60 mil* | 211.21 SQ | 564.28 | 2,205.88 | 23,836.32 | 145,223.78 | (6,302.51) | 138,921.27 |
| 27. R&R Aluminum coating - without fiber | 21,121.00 SF | 1.17 | 340.05 | 4,942.32 | 29,993.94 | (971.57) | 29,022.37 |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## CONTINUED - TPO Roofing System

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Note: See attached doc coded (Roofing 7)** | | | | | | | |
| 28. R&R Drip edge - PVC/TPO clad metal | 652.00 LF | 7.97 | 270.65 | 1,039.28 | 6,506.37 | (773.27) | 5,733.10 |
| 29. R&R Flat roof exhaust vent / cap - gooseneck 12" | 23.00 EA | 129.87 | 61.18 | 597.40 | 3,645.59 | (174.80) | 3,470.79 |
| 30. R&R Nitrogen Exhaust Penetration - through roof - 10"-14"* | 6.00 EA | 142.37 | 21.21 | 170.84 | 1,046.27 | (60.60) | 985.67 |
| 31. R&R Steam Cabinets Exhaust boots* | 3.00 EA | 112.85 | 9.75 | 67.72 | 416.02 | (27.86) | 388.16 |
| 32. R&R Plumbing Vent Boots* | 7.00 EA | 142.37 | 24.75 | 199.32 | 1,220.66 | (70.70) | 1,149.96 |
| **Totals: TPO Roofing System** | | | 7,319.79 | 72,820.70 | 444,243.86 | 20,913.65 | 423,330.21 |

### Gutters

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| *Gutters* | | | | | | | |
| 33. R&R Gutter - aluminum - 7" to 8"* | 652.00 LF | 19.20 | 677.75 | 2,503.68 | 15,699.83 | (1,936.44) | 13,763.39 |
| 34. R&R Downspout - aluminum - 6"* | 140.00 LF | 12.86 | 83.40 | 360.08 | 2,243.88 | (238.28) | 2,005.60 |
| 35. R&R Gutter guard/screen | 49.00 LF | 3.94 | 4.80 | 38.60 | 236.46 | (13.72) | 222.74 |
| **Totals: Gutters** | | | 765.95 | 2,902.36 | 18,180.17 | 2,188.44 | 15,991.73 |
| **Total: Roofing System** | | | 9,067.08 | 83,499.10 | 555,785.55 | 35,050.71 | 520,734.84 |

### Main Level

#### Invoice

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| *Repair Invoice:* | | | | | | | |
| 36. AAMR LLC - Invoice* | 1.00 EA | 3,500.00 | 0.00 | 0.00 | 3,500.00 | (0.00) | 3,500.00 |
| **Totals: Invoice** | | | 0.00 | 0.00 | 3,500.00 | 0.00 | 3,500.00 |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209



| Processing Room | | Height: 10' 1" |
|---|---|---|
| 2169.71 SF Walls | | 3195.21 SF Ceiling |
| 5364.92 SF Walls & Ceiling | | 3195.21 SF Floor |
| 355.02 SY Flooring | | 210.10 LF Floor Perimeter |
| 234.59 LF Ceil. Perimeter | | |

| | | |
|---|---|---|
| **Door** | 2' 11 15/16" X 6' 8" | **Opens into Exterior** |
| **Door** | 6' 8 3/16" X 8' | **Opens into Exterior** |
| **Missing Wall - Goes to Floor** | 2' 4 1/8" X 6' 8 7/16" | **Opens into Exterior** |
| **Door** | 5' 11 7/8" X 7' 11 5/16" | **Opens into Exterior** |
| **Door** | 6' 5 3/4" X 8' | **Opens into Exterior** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| ***Preparation:*** | | | | | | | |
| 37. Special Systems - Electrician - per hour | 8.00 HR | 115.33 | 0.00 | 184.52 | 1,107.16 | (0.00) | 1,107.16 |
| **Note: Electrical labor to disconnect & reconnect sensitive electrical & filtration system prior to protect it during work performed.** | | | | | | | |
| 38. Painter - per hour | 8.00 HR | 89.00 | 0.00 | 142.40 | 854.40 | (0.00) | 854.40 |
| **Note: Painter labor to protect sensitive product processing equipment from the work being performed.** | | | | | | | |
| ***Light Fixtures:*** | | | | | | | |
| 39. R&R Fluorescent - four tube - 8' - fixture w/lens - High Grade* | 12.00 EA | 249.29 | 116.25 | 598.30 | 3,706.03 | (332.14) | 3,373.89 |
| ***Ceiling Painting:*** | | | | | | | |
| 40. Floor protection - corrugated cardboard and tape* | 3,195.21 SF | 0.77 | 62.63 | 492.06 | 3,015.00 | (178.93) | 2,836.07 |
| 41. Mask the walls per square foot - plastic and tape - 4 mil | 2,169.71 SF | 0.32 | 10.63 | 138.86 | 843.80 | (30.38) | 813.42 |
| 42. Mask and prep for paint - tape only (per LF) | 444.69 LF | 0.79 | 1.56 | 70.26 | 423.13 | (4.45) | 418.68 |
| 43. Clean the ceiling | 3,195.21 SF | 0.51 | 139.32 | 326.36 | 2,095.24 | (6.39) | 2,088.85 |
| **Note: See attached doc coded (Painting 1)** | | | | | | | |
| 44. Seal the ceiling w/PVA primer - one coat | 3,195.21 SF | 0.75 | 13.42 | 479.28 | 2,889.11 | (38.34) | 2,850.77 |
| 45. Exterior - paint two coats | 3,195.21 SF | 1.50 | 93.94 | 958.56 | 5,845.32 | (268.40) | 5,576.92 |
| **Note: Exterior paint used to protect ceiling material from high moisture content present in room.** | | | | | | | |
| | | | | | | | |
| **Totals: Processing Room** | | | 437.75 | 3,390.60 | 20,779.19 | 859.03 | 19,920.16 |

Filing 225545023                          VS                          05-2025-CA-034840-XXCA-BC

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209



| **Fresh Room** | | | **Height: 12' 11"** |
|---|---|---|---|

| | |
|---|---|
| 3119.64 SF Walls | 3644.31 SF Ceiling |
| 6763.95 SF Walls & Ceiling | 3644.31 SF Floor |
| 404.92 SY Flooring | 234.47 LF Floor Perimeter |
| 257.28 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Door** | 3' X 6' 8" | **Opens into Exterior** |
| **Door** | 7' 6 9/16" X 9' 11 9/16" | **Opens into Exterior** |
| **Door** | 2' 6" X 6' 7 3/4" | **Opens into Exterior** |
| **Missing Wall - Goes to Floor** | 7' 15/16" X 9' 8 3/8" | **Opens into Exterior** |
| **Door** | 2' 8 3/16" X 6' 5 11/16" | **Opens into Exterior** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| *Preparation:* | | | | | | | |
| 46. Content Manipulation charge - per hour | 16.00 HR | 56.32 | 0.00 | 180.22 | 1,081.34 | (0.00) | 1,081.34 |
| *Machinery:* | | | | | | | |
| 47. Scissor lift - 20' platform height (per day) | 6.00 DA | 183.78 | 0.00 | 220.54 | 1,323.22 | (0.00) | 1,323.22 |
| **Note: Scissor lift needed for the removal & reinstallation of ceiling panels and insulation.** | | | | | | | |
| *Light Fixtures:* | | | | | | | |
| 48. Detach & Reset Fluorescent - four tube - 8' - fixture w/lens - High Grade* | 18.00 EA | 119.65 | 0.00 | 430.74 | 2,584.44 | | 2,584.44 |
| *Ceiling Panels:* | | | | | | | |
| 49. Remove Walk-in Cooler - wall/ceiling panels and floor | 3,294.31 SF | 6.81 | 0.00 | 4,486.86 | 26,921.11 | (0.00) | 26,921.11 |
| 50. Install Walk-in Cooler - wall/ceiling panels and floor | 3,294.31 SF | 39.75 | 0.00 | 26,189.76 | 157,138.58 | (0.00) | 157,138.58 |
| 51. R&R Walk-in Cooler - wall/ceiling panels and floor | 350.00 SF | 105.36 | 1,440.60 | 7,375.20 | 45,691.80 | (4,116.00) | 41,575.80 |
| *Insulation:* | | | | | | | |
| 52. R&R Sprayed polyurethane foam - open cell - 6" | 7,288.62 SF | 6.52 | 428.57 | 9,504.36 | 57,454.73 | (1,224.49) | 56,230.24 |
| **Note: 12" insulation (double application of 6" sprayed polyurethane open cell foam to reach pre-existing conditions)** | | | | | | | |
| *Plumbing & Electrical Systems Manipulation:* | | | | | | | |
| **Note: Electrical & Plumbing labor to manipulate existing plumbing and electrical systems present above ceiling panels being replaced.** | | | | | | | |
| 53. Special Systems - Electrician - per hour | 40.00 HR | 115.33 | 0.00 | 922.64 | 5,535.84 | (0.00) | 5,535.84 |
| 54. Plumber - per hour | 40.00 HR | 126.67 | 0.00 | 1,013.36 | 6,080.16 | (0.00) | 6,080.16 |
| *Cleaning:* | | | | | | | |
| 55. Negative air fan/Air scrubber (24 hr period) - No monit. | 18.00 DA | 71.51 | 0.00 | 257.44 | 1,544.62 | (0.00) | 1,544.62 |
| **Note: fans operating for  days.** | | | | | | | |
| 56. Add for HEPA filter (for negative air exhaust fan) | 3.00 EA | 212.14 | 40.31 | 127.28 | 804.01 | (115.16) | 688.85 |
| 57. Cleaning Technician - per hour | 40.00 HR | 58.78 | 197.50 | 470.24 | 3,018.94 | (0.00) | 3,018.94 |
| *Material Storage:* | | | | | | | |

SOUTHEASTERNSEAPROD

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

### CONTINUED - Fresh Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 58.  Job-site cargo/storage container - 40' long (per month) | 2.00 MO | 115.84 | 16.22 | 49.58 | 297.48 | (0.00) | 297.48 |
| 59.  Job-site cargo container - pick up/del. (each way) 16'-40' | 4.00 EA | 140.00 | 39.20 | 119.84 | 719.04 | (0.00) | 719.04 |
| **Totals:  Fresh Room** | | | **2,162.40** | **51,348.06** | **310,195.31** | **5,455.65** | **304,739.66** |
| **Total:  Main Level** | | | **2,600.15** | **54,738.66** | **334,474.50** | **6,314.68** | **328,159.82** |

### General & OSHA Requirements

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| *Boom Truck:* | | | | | | | |
| 60.  Boom truck and operator - 20 ton | 40.00 HR | 106.00 | 0.00 | 848.00 | 5,088.00 | (0.00) | 5,088.00 |
| 61.  Roofing - General Laborer - per hour | 80.00 HR | 56.32 | 0.00 | 901.12 | 5,406.72 | (0.00) | 5,406.72 |
| Additional labor charges associated with loading roof and general clean-up - labor associated with loading the roof is not addressed in the unit cost of RFG 300S | | | | | | | |
| *Dumpster and Waste:* | | | | | | | |
| Note: Waste removal for general construction projects separate from roofing | | | | | | | |
| 62.  Dumpster load - Approx. 40 yards, 7-8 tons of debris | 14.00 EA | 784.00 | 0.00 | 2,195.20 | 13,171.20 | (0.00) | 13,171.20 |
| 63.  Install Sheathing - plywood - 3/4" CDX | 256.00 SF | 1.39 | 0.00 | 71.16 | 427.00 | (0.00) | 427.00 |
| Note: Protection of driveway and lawn surfaces for dumpster placement | | | | | | | |
| Note:  40yd dumpsters present throughout restoration duration. | | | | | | | |
| *Job Site Cleaning:* | | | | | | | |
| 64.  General clean - up | 32.00 HR | 58.79 | 158.05 | 376.26 | 2,415.59 | (0.06) | 2,415.53 |
| Note: See attached Federal Law - THE OSHA ACT OF 1970, coded (OSHA 1) | | | | | | | |
| 65.  Commercial Supervision / Project Management - per hour | 16.00 HR | 79.64 | 0.00 | 254.84 | 1,529.08 | (0.00) | 1,529.08 |
| Note: See attached doc coded (OSHA 2) | | | | | | | |
| 66.  Fall protection harness and lanyard - per day* | 100.00 DA | 8.00 | 0.00 | 160.00 | 960.00 | (0.00) | 960.00 |
| Note: See attached doc coded (OSHA 13) | | | | | | | |
| 67.  Temporary toilet - Minimum rental charge | 2.00 EA | 110.00 | 0.00 | 44.00 | 264.00 | (0.00) | 264.00 |
| Note: See attached doc coded (OSHA 3) | | | | | | | |
| 68.  Negative air fan/Air scrubber (24 hr period) - No monit. | 12.00 DA | 71.51 | 0.00 | 171.62 | 1,029.74 | (0.00) | 1,029.74 |
| Note: See attached doc coded (OSHA 4) | | | | | | | |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## CONTINUED - General & OSHA Requirements

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 69.  Add for HEPA filter (for negative air exhaust fan) | 4.00 EA | 212.14 | 53.74 | 169.72 | 1,072.02 | (153.55) | 918.47 |
| Note: See attached doc coded (OSHA 4) | | | | | | | |
| 70.  Barricade and warning device - setup and takedown | 8.00 HR | 79.46 | 0.00 | 127.14 | 762.82 | (0.00) | 762.82 |
| Note: See attached doc coded (OSHA 6) | | | | | | | |
| 71.  Barricade/warning sign/traffic cone - Min. equip. charge | 72.00 EA | 52.50 | 0.00 | 756.00 | 4,536.00 | (0.00) | 4,536.00 |
| Note: See attached doc coded (OSHA 6) | | | | | | | |
| 72.  Caution tape | 728.85 LF | 0.12 | 0.51 | 17.50 | 105.47 | (1.46) | 104.01 |
| Note: See attached doc coded (OSHA 6) | | | | | | | |
| 73.  Temporary fencing - 1-4 months (per month) | 728.85 LF | 1.89 | 0.00 | 275.50 | 1,653.03 | (0.00) | 1,653.03 |
| Note: See attached doc coded (OSHA 5) | | | | | | | |
| 74.  Install Deck guard rail - treated lumber | 651.93 LF | 27.29 | 0.00 | 3,558.24 | 21,349.41 | (0.00) | 21,349.41 |
| Note: See attached doc coded (OSHA 13) | | | | | | | |
| 75.  Safety Monitor* | 80.00 HR | 125.00 | 0.00 | 0.00 | 10,000.00 | (0.00) | 10,000.00 |
| Note: See attached doc coded (OSHA 7) | | | | | | | |
| 76.  Safety Flagger* | 160.00 HR | 35.08 | 0.00 | 1,122.56 | 6,735.36 | (0.00) | 6,735.36 |
| Note: See attached doc coded (OSHA 7) | | | | | | | |
| *General Use Storage:* | | | | | | | |
| 77.  Job-site cargo/storage container - 40' long (per month) | 1.00 MO | 115.84 | 8.11 | 24.78 | 148.73 | (0.00) | 148.73 |
| 78.  Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 EA | 140.00 | 19.60 | 59.92 | 359.52 | (0.00) | 359.52 |
| *On-Site Security:* | | | | | | | |
| 79.  Security Guard* | 120.00 HR | 50.00 | 0.00 | 0.00 | 6,000.00 | (0.00) | 6,000.00 |
| Note: 24hr Surveillance | | | | | | | |
| **Totals:  General & OSHA Requirements** | | | 240.01 | 11,133.56 | 83,013.69 | 155.07 | 82,858.62 |
| **Total:  SKETCH1** | | | 11,907.24 | 149,371.32 | 973,273.74 | 41,520.46 | 931,753.28 |
| **Line Item Totals:  SOUTHEASTERNSEAPROD** | | | 11,907.24 | 149,371.32 | 973,273.74 | 41,520.46 | 931,753.28 |

| Additional Charges | Charge |
|---|---|
| Permits, Inspections & Fees Dwelling | 9,732.74 |
| **Additional Charges Total** | **$9,732.74** |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## Grand Total Areas:

| | | |
|---|---|---|
| 5,289.36  SF Walls | 6,839.52  SF Ceiling | 12,128.88  SF Walls and Ceiling |
| 6,839.52  SF Floor | 759.95  SY Flooring | 444.57  LF Floor Perimeter |
| 0.00  SF Long Wall | 0.00  SF Short Wall | 491.87  LF Ceil. Perimeter |
| | | |
| 6,839.52  Floor Area | 7,004.38  Total Area | 5,289.36  Interior Wall Area |
| 5,848.95  Exterior Wall Area | 497.31  Exterior Perimeter of Walls | |
| | | |
| 21,053.13  Surface Area | 210.53  Number of Squares | 651.93  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 811,995.18 |
| Permits, Inspections & Fees Dwelling | 9,732.74 |
| Cleaning Mat Tax | 2.26 |
| Storage Rental Tax | 83.13 |
| Subtotal | 821,813.31 |
| Overhead | 74,685.66 |
| Profit | 74,685.66 |
| Material Sales Tax | 11,329.24 |
| Total Cleaning Tax | 492.61 |
| **Replacement Cost Value** | **$983,006.48** |
| Less Depreciation | (41,520.46) |
| **Actual Cash Value** | **$941,486.02** |
| **Net Claim** | **$941,486.02** |
| Total Recoverable Depreciation | 41,520.46 |
| **Net Claim if Depreciation is Recovered** | **$983,006.48** |

Carrier Relations Department

SOUTHEASTERNSEAPROD                3/11/2024        Page: 11

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Cleaning Mat Tax (7%) | Total Cleaning Tax (7%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|---|---|
| **Line Items** | | | | | | | | |
| | 74,685.66 | 74,685.66 | 11,329.24 | 2.26 | 492.61 | 0.00 | 0.00 | 83.13 |
| **Additional Charges** | | | | | | | | |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | | | |
| | 74,685.66 | 74,685.66 | 11,329.24 | 2.26 | 492.61 | 0.00 | 0.00 | 83.13 |

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## Recap by Room

**Estimate: SOUTHEASTERNSEAPROD**

**Area: SKETCH1**

**Area: Roofing System**

| | | |
|---|---|---|
| HVAC & Plumbing | 84,604.14 | 10.42% |
| TPO Roofing System | 364,103.37 | 44.84% |
| Gutters | 14,511.86 | 1.79% |
| **Area Subtotal:  Roofing System** | **463,219.37** | **57.05%** |

**Area: Main Level**

| | | |
|---|---|---|
| Invoice | 3,500.00 | 0.43% |
| Processing Room | 16,950.84 | 2.09% |
| Fresh Room | 256,684.85 | 31.61% |
| **Area Subtotal:  Main Level** | **277,135.69** | **34.13%** |
| General & OSHA Requirements | 71,640.12 | 8.82% |
| **Area Subtotal:  SKETCH1** | **811,995.18** | **100.00%** |

| | | |
|---|---|---|
| **Subtotal of Areas** | **811,995.18** | **100.00%** |

| | | |
|---|---|---|
| **Total** | **811,995.18** | **100.00%** |

Filing 225545023                    VS                          05-2025-CA-034840-XXCA-BC

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CLEANING | 5,862.04 | 6.45 | 5,855.59 |
| CONTENT MANIPULATION | 2,088.64 | | 2,088.64 |
| GENERAL DEMOLITION | 146,113.04 | | 146,113.04 |
| ELECTRICAL | 3,697.66 | 269.21 | 3,428.45 |
| ELECTRICAL - SPECIAL SYSTEMS | 5,535.84 | | 5,535.84 |
| MISC. EQUIPMENT - COMMERCIAL | 165,441.32 | 4,116.00 | 161,325.32 |
| HEAVY EQUIPMENT | 9,273.32 | | 9,273.32 |
| FRAMING & ROUGH CARPENTRY | 18,147.01 | | 18,147.01 |
| HAZARDOUS MATERIAL REMEDIATION | 1,484.98 | 268.71 | 1,216.27 |
| HEAT, VENT & AIR CONDITIONING | 21,553.99 | 1,792.37 | 19,761.62 |
| INSULATION | 24,343.99 | 1,224.49 | 23,119.50 |
| LABOR ONLY | 12,665.84 | | 12,665.84 |
| LIGHT FIXTURES | 4,892.58 | 332.14 | 4,560.44 |
| PAINTING | 10,695.16 | 520.50 | 10,174.66 |
| ROOFING | 282,422.11 | 20,596.03 | 261,826.08 |
| SCAFFOLDING | 800.00 | | 800.00 |
| SOFFIT, FASCIA, & GUTTER | 13,882.01 | 2,188.44 | 11,693.57 |
| STEEL COMPONENTS | 9,625.60 | 1,059.84 | 8,565.76 |
| TEMPORARY REPAIRS | 6,100.67 | 1.46 | 6,099.21 |
| WATER EXTRACTION & REMEDIATION | 2,145.30 | | 2,145.30 |
| **O&P Items Subtotal** | **746,771.10** | **32,375.64** | **714,395.46** |

| Non-O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| LABOR ONLY | 16,000.00 | | 16,000.00 |
| USER DEFINED ITEMS | 49,224.08 | 9,144.82 | 40,079.26 |
| **Non-O&P Items Subtotal** | **65,224.08** | **9144.82** | **56,079.26** |
| **O&P Items Subtotal** | **746,771.10** | **32,375.64** | **714,395.46** |
| Permits and Fees | 9,732.74 | | 9,732.74 |
| Cleaning Mat Tax | 2.26 | | 2.26 |
| Storage Rental Tax | 83.13 | | 83.13 |
| Overhead | 74,685.66 | | 74,685.66 |
| Profit | 74,685.66 | | 74,685.66 |
| Material Sales Tax | 11,329.24 | | 11,329.24 |
| Total Cleaning Tax | 492.61 | | 492.61 |
| **Total** | **983,006.48** | **41,520.46** | **941,486.02** |

This estimate is subject to review and approval by your insurance company if prepared in relation to a

SOUTHEASTERNSEAPROD                              3/11/2024          Page: 14

 **Ask An Adjuster**

4450 W Eau Gallie Blvd Suite 120
Melbourne, Florida 32934
321-323-3209

pending claim. All amounts compiled are subject to the terms, conditions and limits of your insurance policy, further as directed by statement below:

"This is a repair estimate. The insurance policy may contain provisions that will reduce any payment that might be made. Receipt
of a copy of this estimate is not to be interpreted as an acceptance of liability. All estimate figures are subject to company review
and approval. This is not an authorization to repair. Responsibility for determining coverage, applicability to your specific policy
and/or other legal interpretations are made solely by insured, insured's representative and/or legal council. Authorization to repair
or guarantee of payment must come from the owner(s) of the property.

Your representative(s) assume no responsibility for the quality of repairs that might be made. A copy of this document does not constitute a settlement of any claim. This estimate was prepared using generally prevailing prices of building materials and labor in your area according to the most recent data available unless custom/unique materials and/or local market labor costs necessitate modifications to pricing to improve accuracy. Unless directed otherwise, all repair costs estimated utilizing Replacement Cost Valuation.

The above figures are subject to the insurance carrier's approval if prepared in relation to a claim. Pricing considered valid until next pricing database is released. This estimate is also subject to change or amendment as required should further information become available."



# Florida Building Code, OSHA & Manufacturer Guidelines Residential

**Title XXXVII** INSURANCE
**Florida Statutes**

**Chapter 626**
INSURANCE FIELD REPRESENTATIVES AND OPERATIONS

**View Entire Chapter**

**626.9744 Claim settlement practices relating to property insurance.**—Unless otherwise provided by the policy, when a homeowner's insurance policy provides for the adjustment and settlement of first-party losses based on repair or replacement cost, the following requirements apply:

(1) When a loss requires repair or replacement of an item or part, any physical damage incurred in making such repair or replacement which is covered and not otherwise excluded by the policy shall be included in the loss to the extent of any applicable limits. The insured may not be required to pay for betterment required by ordinance or code except for the applicable deductible, unless specifically excluded or limited by the policy.

(2) When a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement of ajoining areas.

In determining the extent of the repairs   or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost,

the remaining useful life of the undamaged portion, and other relevant factors.

(3) This section shall not be construed to make the insurer a warrantor of the repairs made pursuant to this section.

(4) Nothing in this section shall be construed to authorize or preclude enforcement of policy provisions relating to settlement disputes.

# OSHA Regulations

**OSHA 1 - United States Department of Labor - OSHA Act of 1970 (Federal Law)** Sec. 5 Duties (a) Each employer --
(1) 29 USC 654

shall furnish to each of his employees' employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

(2) shall comply with occupational safety and health standards promulgated under this Act.

(b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct.

**OSHA 2 - Commercial/Residential Supervision/Project Management – per hour**

**1926.32(f) Competent Person**

Competent person means one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them.

1926.1101(o)(1) General

covered by this standard,
On all construction worksites the employer shall designate a competent
person, having the qualifications and authorities  and health required by
for ensuring worker safety
Subpart C, General Safety and Health Provisions for Construction (29 CFR 1926.20 through

1926.32). 1926.1101(o)(2) Required Inspections by the Competent Person

Section 1926.20(b)(2) which requires health and safety prevention programs to provide for frequent and regular inspections of the job sites, materials, and equipment to be made by competent persons, is incorporated.

1926.1101(o)(3) Additional Inspections

frequent and regular inspections of the job sites,
In addition, the competent person shall make    in order
to perform the duties set out below in paragraph (o)(3)(i) and (ii) of this section. For Class I jobs, on-site inspections shall be made at least once during each work shift, and at any time at employee request. For Class II, III, and IV jobs, on-site inspections shall be made at intervals sufficient to assess whether conditions have changed, and at any reasonable time at employee request.

**Fall Protections (Roofing) 1926.501**

Duty to Have Fall Protection General - 1926.501(a)(1)

This section sets forth requirements for employers to provide fall protection systems. All fall protection required by this section shall conform to the criteria set forth in

1926.502of this subpart. 1926.501(a)(2)

The employer shall determine if the walking/working surfaces on which its employees are to work have the strength and structural integrity to support employees safely. Employees shall be allowed to work on those surfaces only when the surfaces have the requisite strength and structural integrity.

1926.501(b)(1)

"Unprotected sides and edges." Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8m) Or more above a lower level shall be protected from falling by the use of guardrail system, safety net, or personal fall arrest systems.

**OSHA 4 - Negative Air Fan/Air Scrubber (24 Hr. Period) – No Monit.**

**Negative Air Fan: 1926.57(a) General Ventilation**

Whenever hazardous substances such as dusts, fumes, mists, vapors, or gases exist or are produced in the course of construction work, specified in1926.55(a).
their concentrations shall not exceed the limits
When ventilation is used as an engineering control method, the system shall be installed and operated according to the requirements of this section.

1926.57(b)

Local Exhaust Ventilation - Local exhaust ventilation when used as described in (a) shall be designed to prevent dispersion into the air of dusts, fumes, mists, vapors, and gases in concentrations causing harmful exposure. Such exhaust systems shall be so designed that dusts, fumes, mists, vapors, or gases are not drawn through the work area of employees.

1926.57(c)

Design and Operation - Exhaust fans, jets, ducts, hoods, separators, and all necessary appurtenances, including refuse receptacles, shall be so designed, constructed, maintained and operated as to ensure the required protection by maintaining a volume and velocity of exhaust air sufficient to gather dusts, fumes, vapors, or gases from said equipment or process, and to convey them to suitable points of safe disposal, thereby preventing their dispersion in harmful quantities into the atmosphere where employees work.

The exhaust system shall be in operation continually during all operations which it is designed to serve. If the employee remains in the contaminated zone, the system shall continue to operate after the cessation of said operations, the length of time to depend upon the individual circumstances and effectiveness of the general ventilation system.

1926.57(d)(2)

Since dust capable of causing disability is, according to the best medical opinion, of microscopic size, tending to remain for hours in suspension in still air, it is essential that the exhaust system be continued in operation for a time after the work process   or equipment served by the same shall have ceased, in order to ensure the removal of the harmful elements to the required extent. For the same reason, employees wearing respiratory equipment should not remove same immediately until the atmosphere seems clear.

1926.57(e)

Disposal of Exhaust Materials - The air outlet from every dust separator, and the dusts, fumes, mists, vapors, or gases collected by an exhaust or ventilating system shall discharge to the outside atmosphere. Collecting systems which return air to work area may be used if concentrations which accumulate in the work area air do not result in harmful exposure to employees. Dust and refuse discharged from an exhaust system shall be disposed of in such a manner that it will not result in harmful exposure to employees.

# Roofing Line Items

## Roofing 0 – Sheathing 5/8 CDX

1507.2.1 Deck Requirements

**Asphalt shingles shall be fastened to solidly sheathed decks.**

## Roofing 1 - Re-Nailing of the Roof Sheathing – Complete Re-Nail

Note: FBC – Existing Building Section 706.7 establishes the requirement that the roof decking is to be re-nailed. From this requirement, 2004 code or newer.

NOTE: Structures that already comply are exempt From this requirement

## Roofing 2 - Asphalt Starter – Peel and Stick

Note: Florida Building Code 1518.7.3.3 "Intersections, eaves, rakes, valleys, gable ends, and the starter course of asphaltic shingles shall be set in an 8-inch (203 mm) wide bed of approved cold adhesive or roofing cement."

Note: 3 tab shingles do not meet the wind resistance requirements in FBC 1507.2.7.1. Replacement shingle must meet code, such as an architectural shingle.

1507.2.5 Asphalt shingles

Asphalt shingles shall have self-seal strips or be interlocking and comply with ASTM D225 or ASTM D3462. Shingles shall also comply with Table        Asphaltshingle packaging shall bear labeling 1507.2.7.1.
indicating compliance with one of the required classifications as shown in Table 1507.2.7.1.

Roofing 3 – 30LB Felt w/ Water Barrier Seam Tape

Underlayment: A minimum 4-inch-wide (102 mm) strip of self-adhering polymer-modified bitumen membrane complying with ASTM D1970, installed in accordance with the manufacturer's instructions for the deck material, shall be applied over all joints in the roof decking. An approved underlayment in accordance with Table R905.1.1.1 for the applicable roof covering shall be applied over the entire roof over the 4- inch-wide (102 mm) membrane strips.

# Window Line Items

## Window 0 – FBC 2 2411.3.1.1

Note: Per FBC 2 2411.3.1.1 Doors and operative windows in exterior walls. -The design and approval of sliding doors, swinging doors and operative windows in exterior walls, including the supporting members shall be based on the proposed use-height above grade in accordance with Chapter 16 (HVHZ)

## Window 1 - Add on for Impact Resistant Laminated Glass

Note: Per FBC 2410.2 Exterior wall cladding, surfacing, and glazing shall be designed and constructed to sufficiently resist the full pressurization from the wind loads prescribed in Chapter 16 (High-Velocity Hurricane Zones) and the concentrated loads that result from hurricane-generated wind-borne debris.

Exterior wall cladding, surfacing, and glazing, within the lowest 30 feet (9.1 m) of the exterior building walls shall be of sufficient strength to resist large missile impacts as outlined in Chapter 16 (HVHZ)

## Window 2 - Add on for Tempered Glass – Per Pane

Note: Per FBC 2411.1.5 Heat-strengthened and ceramic-coated spandrel glass shall comply with ASTM C1048.

Window 3 - Additional Charge for a Retrofit Window

Note: Per manufacturer Prepare the opening (leveling off the sill if necessary). It is important to remember that the window MUST fit into the opening plumb, level and square. Line item includes Additional screws, shims, caulking, trim, and additional labor to install a window in an opening with an existing exterior finish. Excludes: Removal/repair of drywall, removal/repair of exterior finish, resizing of opening, and painting.

Window 4 - 1 x 4 Lumber, Select Pine (.333 BF per LF)

Note: Per TAS 202-94 5.1 Test specimen - All parts of the test specimen shall be full size, using the same materials, details, methods of construction and methods of attachment as proposed for actual use. The specimen shall consist of the entire assemble unit attached to a given type of structural framing of the building and shall contain all devices used to resist wind forces. In the case of windows, doors and sliding glass doors, a pressure treated nominal 2x4 wood buck # 3 southern pine shall be used for attachment of the specimen to the test frame/stand/chamber/ Such wood buck will become part of the approval.

Window 5 - Caulking – Butyl Rubber

Note: Per manufacturer Place a 1" deep bead of foam approx. 1" from the interior of the frame to allow for expansion. To ensure a continuous interior seal, apply sealant over the interior surface of any shims or clips that interrupt the foam seal. Exterior Sealant - Apply a continuous bead of sealant where the new frame contacts the exterior stop between the frame and the opening. Continue the seal across the bottom of the sill.

Window 6 - Urethane Foam Sealant

Note: Per manufacturer Place a 1" deep bead of foam approx. 1" from the interior of the frame to allow for expansion. To ensure a continuous interior seal, apply sealant over the interior surface of any shims or clips that interrupt the foam seal. Exterior Sealant - Apply a continuous bead of sealant where the new frame contacts the exterior stop between the frame and the opening. Continue the seal across the bottom of the sill.

Window 7 - Flashing – Sill Flashing – Moldable Tape

Note: Per FBC 1405.4 Flashing. Flashing shall be installed in such a manner so as to prevent moisture from entering the wall or to redirect that moisture to the exterior. Flashing shall be installed at the perimeters of exterior door and window assemblies, Per manufacture Install a Secondary Seal (Integral fin installations) —                                    flashing tape (or equivalent) at rough Apply foil backed butyl window and door opening sill and over installation fins at head and jambs

Window 8 - Flashing – Sill Pan Flashing – Plastic Up To 4.5' Sill

Note: Sill Pan Installation applicable when replacing existing aluminum windows in Per manufacture

stucco. The method requires the removal of the existing sill and replace to the width of the opening.

# Flooring Line Items

Note: Major flooring manufacturer's installation guides requires the surface to clean, ~~dry~~, smooth, level and degreased prior to installation. See links below.

**Flooring 1 – Calcium Chloride Moisture Test – Per Sample**

**Flooring 2 – Clean Floor**

**Flooring 3 – Floor Leveling Cement - Average**

**Tile:**

https://www.daltile.com/how-to/how-to-install-tile/how-to-install-floor-tile

**Snap lock:**

https://images.homedepot-static.com/catalog/pdfImages/4d/4d83b73c-e3e2-4a64-9714-b1bd9d335aaa.pdf

**Engineered:**

https://images.homedepot-static.com/catalog/pdfImages/df/df3ed4fa-8265-4e4e-a645-587e74082a05.pdf

**Hardwood:**

https://images.homedepot-static.com/catalog/pdfImages/ed/ede1a1c0-081b-4353-8b84-dbd951cc2487.pdf

**Linoleum:**

https://images.homedepot-static.com/catalog/pdfImages/4a/4ae4845f-9e24-4f92-9c7a031e64f4d792.pdf

**Vinyl Tile:**

https://images.homedepot-static.com/catalog/pdfImages/49/49cf90a1-5798-458e-ba47-382145790407.pdf

**Parquet:**

https://images.homedepot-static.com/catalog/pdfImages/51/518789de-c8a8-43ee-a5b2-c0a7cdafb02c.pdf

# Painting Line Items

**Interior Painting**

Note: Major paint manufacturers recommend cleaning all surfaces prior to painting. For example, see link below to a very common paint used (Behr) for preparation instructions.

https://www.behr.com/pro/products/interior-paint-and-prime

**Painting 1 – Clean the Surface Areas**

**Exterior Painting**

**Ext Painting 1 – Clean with Pressure/Chemical Spray**

Note: This major paint manufacturer recommends pressure cleaning the surface prior to painting. For example, see link below to a very common paint used (Behr for preparation instructions

https://images.homedepot-static.com/catalog/pdfImages/91/913b0784-6f66-4077-9b94 - dff684857381.pdf

**Epoxy Paint**

Note: See attached manufacturer specification in relation to the below line items

https://images.homedepot-static.com/catalog/pdfImages/77/770128af-31dc-481a-a5fd 041ba7932492.pdf

**Epoxy 1 – Clean Floor – Heavy**

**Epoxy 2 – Masonry Acid Wash (etching)**

# Heating and Air (HVAC) Line Items

**Heating and Air Conditioning Systems – Minimum SEER Rating**

Note: Minimum SEER rating per the Department of Energy is 14 in the State of Florida. See attached link regarding this federal regulation. In addition, see attached manufacturer specification regarding components on how they must match for the warranty and SEER rating to be consistent.

**Department of Energy:**

https://www.energy.gov/sites/prod/files/2015/11/f27/CAC%20Brochure.pdf

**Manufacturer Installation Guidelines:**

https://www.goodmanmfg.com/pdfviewer.aspx?pdfurl=docs/librariesprovider6/default-document-library/ss-gsz14.pdf?view=true

## HVAC 1 – Central Air Cond. System – Refrigerant Evacuation

### Heating and Air Conditioning Systems – Refrigerant Evacuation & Re-Charge

**Note:** Xactimate Line item does not include the evacuation of the refrigerant when removing the old unit nor does include charging the new air handler with refrigerant

**Actual Xactimate Line-item description for Air Handler**

Excludes: Refrigerant and system charging/balancing. Evacuation of refrigerant.

Quality: 2-ton.

Green: LEED considers air handlers to be green when they meet one or more of the requirements for: Minimum Indoor Air Quality Performance, Enhanced Indoor Air Quality Strategies Fundamental Commissioning, Minimum Energy Performance, Optimize Energy Performance, and/or Thermal Comfort.

Note: Can be used with AC and heat pump systems.

Note: The rule of thumb is two to four pounds of refrigerant per one ton of your unit. You should always check the specifications of your unit. However, most home air conditioning units are between one ton and five tons. Anything over five tons is considered a commercial grade unit.

## HVAC 2- Central Air Cond. System – Recharge – 13lb Refrigerant

-END-

| Construction Project Duration by Project Type | | | |
|---|---|---|---|
| Project | Per Room/Elevation | Entire Home | OSHA Supervision |
| Bathroom Remodel | vs | 3-4 Weeks | 4 HRS |

05-2025-CA-034840-XXCA-BC

| Kitchen Remodel | 1 | 3 Weeks | 4 HRS |
|---|---|---|---|
| Paint Home - Interior | 1 Day | 1 Week | 2 HRS |
| Paint Home - Exterior | | 1 Week | 2 HRS |
| Window Replacement | 1 Day | 1 Week | 2 HRS |
| Hardwood Flooring | 1-3 Days | 2 Weeks | 2 HRS |
| Laminate Flooring | 1-3 Days | 2 Weeks | 2 HRS |
| Tile Flooring | 1-3 Days | 2 Weeks | 2 HRS |
| Carpet | 1 Day | 3-5 Days | 2 HRS |
| Shingle Roof - 1-25 SQ | | 2-3 Days | 4 HRS |
| Shingle Roof - 25-50 SQ | | 1 Week | 4 HRS |
| Shingle Roof - 50 + SQ | | 2 Weeks | 8 HRS |
| Tile Roof - 1-25 SQ | | 1 Week | 4 HRS |
| Tile Roof - 25-50 SQ | | 2 Weeks | 4 HRS |
| Tile Roof - 50+ SQ | | 3 Weeks + | 8 HRS |
| New Siding - Stucco, Vinyl, etc | 3-5 Days | 2- Weeks | 2 HRS |
| Wood Fencing | 1 Day | 3-5 Days | 2 HRS |
| Large Commercial Roofing | | 3-8 Months | Varies |
| Gutters | 1 Day | 1-3 Days | 2 HRS |

**Reliable Source -** https://www.homeadvisor.com/r/home-construction-timeline/



SUBJECT: **Platinum and Extended Warranties**
ROOFING and ASPHALT LLC Technical Services Bulletin 012920

**Issue:** This Technical Bulletin is to address sidewall and front wall flashing Key

consideration:

• Sidewall and Front wall flashing building code
is required by

•

New flashing is required for the Platinum warranty.

• Properly installed flashing helps to direct water away from wall penetrations

*Owens Corning Roofing and Asphalt LLC Position:*

Because of certain types of architectural designs of homes, we understand that different
style of siding can be used. An example of these are vinyl, aluminum, wood, stucco,
brick, and cementitious type board.

When reroofing a home with the above example siding it may become difficult to
replace existing flashing without damaging the siding. This sometimes creates a
challenge for the roofing contractor on what is the best solution for replacing/removing
old flashing.

*Position*

Owens Corning will allow using existing flashing under the following

conditions. • The existing flashing should be in like-new condition

• It must be of the proper gauge required by local building codes • It must be

installed per the manufactures and building codes requirements Do not use existing
flashing that is.

1. Buckled

2. Rusted

3. Bent
4. Cracked

5. Broken

If you have any questions prior to re-using any existing flashing contact Owens
Corning Roofing and Asphalt.

# Construction Productivity and Why It Is Critical to Project Success

Prior to exploring the details of the studies, this paper will address the fundamental concept of construction productivity and why it is considered instrumental to the success (or failure) of a construction project. In its most basic form, construction productivity (and productivity, generally) is defined as the amount of "inputs" required to produce an "output". The work of a contractor requires the expenditure of resources in order to produce outputs, or the actual placement of the construction work.

Typically, the "inputs" of a contractor consist of labor, equipment and materials that are employed in the performance of a contractual scope of work. The result of the inputs are the "outputs", which may include, for example, the installation of building foundations, the erection of a building super-structure, the installation of mechanical and electrical systems, the trenching of a pipeline, or the paving of a roadway.

According to construction industry materials, productivity is also defined as "the output per hour of input," or the "relative measure of labor efficiency, either good or bad, when compared to an established base or norm as determined from an area of great expertise. Productivity change may be either an increase or decrease in cost."[3]

Productivity is considered paramount in the performance of a contractor because 1) construction contractors typically formulate bids based on an estimated rate of productivity per unit of material installed; 2) construction projects usually have a definable date in which the work is to reach completion (which is driven by production[4] and productivity); and 3) construction contractors are often paid on the basis of work completed (in contrast to payment per unit of input, e.g. a labor hour). Thus, for a contractor to fulfill its contractual obligations and still make a profit, the actual productivity achieved should perform to (or similar to) the estimated efficiency included in its bid.

In some instances, as a contractor attempts to produce outputs, the required input (often, a "labor hour") is actually greater per unit of work installed than that which was assumed when the contractor developed its bid. Depending upon contract terms and prevailing law, when the causes and reasons for elevated resource requirements are beyond the contractor's control or ability to foresee (at the time of bidding), the contractor may stand to recover the increased costs resulting from the reduced productivity. When this occurs, the contractor is said to have experienced a "loss of productivity" or "loss of efficiency." Considering that labor costs are often the largest cost component to a contractor, it follows that losses in productivity can become substantial.[5]

---

[3] McDonald, D. F., & Zack Jr., J. G. (2004). Estimating Lost Labor Productivity in Construction Claims. In AACE International Recommended Practice No. 25R-03 (Rev. April 13, 2004 ed., p. 2). N.p.: AACE International.

[4] Production (as contrasted to "productivity") is often described as the progress or rate of the contractor per unit of time, with no recognition of the quantum of input(s) necessary to meet a certain rate of progress.

[5] AACE International. Skills and Knowledge of Cost Engineering. 6th ed., AACE International, 2015, p. 270.

EXHIBIT D



## DIVERSE LEGAL SOLUTIONS
### A L A W   F I R M

May 29, 2024

**VIA EMAIL:** chubbclaimsfirstnotice@chubb.com, wsgcasclaims@acegroup.com & George.lasho@chubb.com
George Lasho
Chubb North American Claims
PO Box 5122
Scranton, PA 18505-0554

|        |            |                                   |
|--------|------------|-----------------------------------|
| **Re:** | **Insured:** | **Southeastern Seaproducts, Inc.** |
|        | **Claim No:** | **KY23K2874003** |
|        | **Policy No:** | **FSF16203592 002** |
|        | **D/Loss:** | **4.26.23** |

Dear Mr. Lasho:

Please be advised that the above-named client has retained my firm in regards to the above-referenced dispute. My client has retained my law firm to pursue all legal remedies due to your failure to timely determine coverage for its loss. Accordingly, from today on, please direct all communication to my office only.

Further, please accept this correspondence as our formal request that you provide me with a certified copy of the insured's policy of insurance in force at the time of this claim, copies of any and all documents, including but not limited to, correspondence to/from the Insured, estimates, including any estimates prepared by representatives of the insured, copies of any payments and corresponding estimates, recorded and/or transcribed statements of any Insured as well as any reports from any experts you may have retained in the investigation and evaluation of this claim.

Thank you for your time and attention to this matter. If you have any further questions please feel free to contact me.

Kind regards,

_/s/ S. Antonio Jimenez_____
S. Antonio Jimenez, Esq.

EXHIBIT E

## Property Insurance Notice of Intent to Initiate Litigation

Notice Number:        **198009**

Notice Accepted:      **6/29/2024 3:43:37 PM**

☑      The submitter hereby states that The Property Insurance Intent to Initiate Litigation Notice is provided pursuant to Section 627.70152, Florida Statutes.

### Claimant (Insured filing suit under a residential or commercial insurance policy)

| | |
|---|---|
| Name: | **Souteaster Seaproducts Inc.** |
| Street Address: | **1500 Maple Ave.** |
| City, State Zip: | **Melbourne, FL 32935** |
| Email Address: | **markjr@frozenliveshellfish.com** |
| Policy Number: | **FSF16203592 002** |
| Claim Number: | **KY23K2874003** |

### Attorney

| | |
|---|---|
| Name: | **S. Antonio Jimenez** |
| Street Address: | **55 Weston Rd., 408** |
| City, State Zip: | **Weston, FL 33326** |
| Email Address: | **saj@diverselegalsolutions.com** |
| Florida Bar #: | **0658731** |
| Firm Name: | **Diverse Legal Solutions** |
| Role on Claim: | **Represent Insured** |

* Pursuant to Section 627.70152, Florida Statutes, the Attorney filing this Notice must provide a copy of this Notice to the Claimant. The Claimant's email address is a required field as this Notice will be transmitted to the Claimant upon submission.

## Notice Details

Insurer Name:

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY(10172)**

\* Make sure to reference the declarations page on the insurance policy to confirm the legal name of the insurance company. If you are unsure about the correct legal name of the underwriting company, please check with the Secretary of State, Division of Corporations, at www.sunbiz.org, or the Office of Insurance Regulation website at www.companysearch.myfloridacfo.gov to search for an insurer's name.

The Department of Financial Services (Department) does not review entries for accuracy, determine the validity of the allegations, nor verify that the proper insurance company has been selected on the Property Insurance Intent to Initiate Litigation Notice (Notice). This system determines whether a filing is accepted based on whether it contains a response in all required fields necessary to submit a complete Property Insurance Intent to Initiate Litigation Notice. No determination is made as to the legal sufficiency of the information provided by the consumer or their counsel in the submission.

Alleged Acts or Omissions of the Insurer:

**The insurer has breached the policy of insurance and effectively denied coverage by its failure to comply with the policy's loss payment provision which provides in relevant part as follows: Loss Payment. g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and: (1) We have reached agreement with you on the amount of loss; or (2) An appraisal award has been made. The Insured has provided a proof of loss and documentation in support thereof. Additionally, all relevant documents associated with the loss have been provided. The Claimant has complied with all obligations placed upon them by the subject policy. Yet the Insurer continues to refuse to either reach a conclusion and/or issue payment. As a result of its inaction the Insurer has tacitly denied coverage and payment to its policyholder/Claimant.**

This Notice is being provided following a denial of coverage.

   Estimate of Damages:    **$983,006.00**

## Attachments

The following documents were included as part of this Notice. Please open this Notice online to review or download these documents.
1. AAA Estimate.pdf -

EXHIBIT F



**Kelley Kronenberg**

ATTORNEYS AT LAW

10360 West State Road 84, Fort Lauderdale FL 33324 | Phone: (954)370-9970, Fax: (954)382-1988
www.kelleykronenberg.com

July 15, 2024

S. Antonio Jimenez
Diverse Legal Solutions
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via email: saj@diverselegalsolutions.com*

RE:     Insured:                      Southeastern Seaproducts, Inc.
            Loss Locations:        1500 Maple Ave., Melbourne, FL 32935
            Nature of Loss:        Windstorm
            Date of Loss:          April 26, 2023
            Policy Number:        FSF16203592 002
            Claim Number:         KY23K2874003
            Writing Company:     Westchester Surplus Lines Insurance Company

Dear Mr. Jimenez:

Westchester Surplus Lines Insurance Company ("Westchester") acknowledges receipt of the Property Insurance Notice of Intent to Initiate Litigation, Notice Number: 198009, accepted by the Florida Department of Financial Services on June 29, 2024 (hereafter referred to as "the Notice"). The Notice was submitted on behalf of Southeastern Seaproducts, Inc., incorrectly listed on the Notice as "Souteaster Seaproducts, Inc."

As a preliminary matter, your notice is deficient on its face and fails to comply with the specificity requirements of Fla. Stat. § 627.70152(3)(a)(3), which states when the Notice is provided by an attorney or other representative, the Notice must state that a copy was provided to the claimant. The filed Notice lacks the required language, rendering the Notice noncompliant with Fla. Stat. § 627.70152(3)(a)(3). In addition, under Fla. Stat. § 627.70152(3)(a)(5), where a Notice is provided following alleged acts or omissions by the Insurer other than a denial of coverage, *both* of the following must be included, with specificity, in the Notice: (a) a presuit demand, which must itemize the damages, attorney fees, and costs and (b) the disputed amount. The Notice herein merely contains a single line item for the "estimate of damages" and therefore fails to comply with the mandatory specificity requirements of Fla. Stat. § 627.70152. Therefore, the Notice is wholly deficient and is void *ab initio*. Westchester requests an updated, compliant Notice be filed, setting forth the full disputed amount, attorneys fees and costs, and presuit demand, along with any and all estimates in support of any demand, such that Westchester is afforded the opportunity to properly formulate a response.



Notwithstanding the foregoing, and in an abundance of caution, Westchester provides the following response to the Notice. Pursuant to section 627.70152(4)(b) *Fla. Stat.*, Westchester is requiring your client to participate in private mediation as our selected method of alternative dispute resolution. We propose to coordinate an agreeable mediation date with you and your client utilizing any of the following mediators: Casimir Maliszewski, Gerald Albrecht, Rusty Perez, Steven Teuber, Eric Luckman, or Eric Kleinman. Please contact us with your mediator selection and your client's availability, and we will work with you to accommodate a date as soon as possible.

In addition, at this time, Westchester is requesting documentation from Southeastern Seaproducts, Inc. as detailed below in continuing its investigation into the loss, damages and demand. Please be advised the subject Policy contains certain post-loss **Duties in the Event of Loss or Damage**. Pursuant to the terms and conditions of the Policy, the failure to provide documentation requested and cooperate with the overall investigation is a violation of the Duties in the Event of Loss or Damage Provision. These failures may jeopardize coverage.

Please refer to the subject insurance policy, specifically form **CP 00 10 10 12, BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

### 3. Duties In The Event Of Loss Or Damage

    **a.** You must see that the following are done in the event of loss or damage to Covered Property:

        ***

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

While Westchester evaluates your estimate, you must comply with your **Duties in the Event of Loss or Damage**.

## <u>REQUEST FOR INFORMATION</u>

To further assist Westchester in the ongoing investigation of your claim, Westchester is hereby requesting the following information be provided within the next fifteen (15) days:

1) Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof after April 26, 2023.

2) Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the interiors after April 26, 2023.

3) Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the exterior after April 26, 2023.

4) Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the HVAC after April 26, 2023.

5) Any and all documentation setting forth the damages to the "fresh room" along with any bids, estimates, reports, repair receipts, proofs of payment or other documentation in support of the cooler replacement.

6) Any and all documentation related to the loss relevant to Westchester's investigation.

By stating the foregoing, Westchester does not waive any rights under the policy or law, and nothing in this letter shall constitute a waiver of any right or an admission of any obligation under the policy. Nor shall any conduct of Westchester or its agents, attorneys, or employees be construed as an estoppel, waiver, modification, or surrender of the terms, limitations, exclusions, conditions, or agreements of the insurance policy.

If you have any questions or concerns about this claim, please call me as soon as possible so that we may have the opportunity to address them promptly and fairly.

Sincerely,

*Todd A. Schwartz*
Todd A. Schwartz, Esq.

10/30/24, 2:25 PM    Diverse Legal Solutions Mail - KY23K2874003 Southeastern Seaproducts Inc. v. Westchester Surplus Lines 123.004171:

Case 6:25-cv-01396-WWB-HRP Document 1-1   Filed 07/24/25   Page 132 of 183 PageID 171:

138



**EXHIBIT G**

S. Antonio Jimenez <saj@diverselegalsolutions.com>

---

### KY23K2874003 Southeastern Seaproducts Inc. v. Westchester Surplus Lines 123.004171:

2 messages

---

**Todd A. Schwartz** <tschwartz@kelleykronenberg.com>            Thu, Aug 1, 2024 at 10:04 AM
To: "S. Antonio Jimenez" <saj@diverselegalsolutions.com>

Antonio — hope all is well. I wanted to quickly follow up on the requested information in anticipation of next weeks mediation. Please advise.

Thanks,

Todd

**Todd A. Schwartz**
*Partner/Business Unit Leader*
10360 West State Road 84
Fort Lauderdale | FL 33324
**(954)** 370-9970 Ext.1601 | Office
**(646)** 263-5315 | Cell
**(954)**382-1988 | Fax
Website | Email | Bio

      

Important - Kelley Kronenberg utilizes spam and junk email filtration applications in its email information systems. These systems may prevent or delay delivery of certain email communications. If you do not receive a timely response to an email communication, please contact the intended recipient via phone in one of our office locations available here.

The information transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you received this in error, please contact the sender and delete the material from your computer. Thank you.

📄 **NOI Response SOUTHEASTERN SEAPRODUCTS 4861-8057-2880 v.1.pdf**
117K

---

**S. Antonio Jimenez** <saj@diverselegalsolutions.com>            Tue, Aug 6, 2024 at 2:37 PM
To: "Todd A. Schwartz" <tschwartz@kelleykronenberg.com>

Good afternoon Todd,
Attached hereto are all of the documents relevant to your request for information I currently have in my possession. I look forward to working with you to potentially resolve this matter during mediation Thursday 8.8.24 at 10:00 a.m.

Kind regards,

**S. Antonio Jimenez, Esq.**
**Diverse Legal Solutions, A Law Firm, Inc.**
55 Weston Road, Suite 408
Weston, FL 33326
Telephone: 954.361.7507
Fax: 954.354.3338
www.diverselegalsolutions.com
saj@diverselegalsolutions.com

RATED BY
**Super Lawyers**

**PRIVILEGE AND CONFIDENTIALITY NOTICE:** This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The contents of this e-mail message and any attachments are intended solely for the party or parties addressed and named in this message. This communication and all attachments, if any, are intended to be and to remain confidential, and it may be subject to the applicable attorney - client and or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute, or copy this message and or any attachments if you are not the intended recipient. Do not disclose the contents or take any action in reliance on the information contained in this communication or any attachments. Although this E-mail and any attachments are believed to be

free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Diverse Legal Solutions, A Law Firm, Inc., for damage arising in any way from its use.

[Quoted text hidden]

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**5 attachments**

**HVAC Estimate_2064_from_Premier_AC__Mechanical_Inc_CAC1814223.pdf**
377K

**Nitrogen System Repair Invoice#050944-12132022-$14,580.pdf**
172K

**Southeastern Seaproducts_ Invoice for TPO roof repair post DOL.pdf**
28K

**Notarized SPOL - Southeastern Seaports Inc.pdf**
1979K

**AAA Estimate.pdf**
304K

EXHIBIT H

## Property Insurance Notice of Intent to Initiate Litigation

Notice Number: **204481**
Notice Accepted: **8/12/2024 5:31:44 PM**

☑    The submitter hereby states that The Property Insurance Intent to Initiate Litigation Notice is provided pursuant to Section 627.70152, Florida Statutes.

### Claimant (Insured filing suit under a residential or commercial insurance policy)

Name: **Southeastern Seaproducts, Inc.**
Street Address: **1500 Maple Ave**
City, State Zip: **Melbourne, FL 32935**
Email Address: **markjr@frozenliveshellfish.com**
Claimant Type:
Policy Number: **FSF16203592002**
Claim Number: **KY23K2874003**

### Attorney

Name: **S. Antonio Jimenez**
Street Address: **55 Weston Rd., #408**
City, State Zip: **Weston, FL 33326**
Email Address: **saj@diverselegalsolutions.com**
Florida Bar #: **0658731**
Firm Name: **Diverse Legal Solutions**
Role on Claim: **Represent Insured**

* Pursuant to Section 627.70152, Florida Statutes, the Attorney filing this Notice must provide a copy of this Notice to the Claimant. The Claimant's email address is a required field as this Notice will be transmitted to the Claimant upon submission.

**Notice Details**

Insurer Name:

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY(10172)**

\* Make sure to reference the declarations page on the insurance policy to confirm the legal name of the insurance company. If you are unsure about the correct legal name of the underwriting company, please check with the Secretary of State, Division of Corporations, at www.sunbiz.org, or the Office of Insurance Regulation website at www.companysearch.myfloridacfo.gov to search for an insurer's name.

The Department of Financial Services (Department) does not review entries for accuracy, determine the validity of the allegations, nor verify that the proper insurance company has been selected on the Property Insurance Intent to Initiate Litigation Notice (Notice). This system determines whether a filing is accepted based on whether it contains a response in all required fields necessary to submit a complete Property Insurance Intent to Initiate Litigation Notice. No determination is made as to the legal sufficiency of the information provided by the consumer or their counsel in the submission.

Alleged Acts or Omissions of the Insurer:

**This Notice of Intent to Initiate Litigation is being provided pursuant to Fla. Stat. 627.70152. The above named insurer has woefully undervalued the covered damages sustained by the Claimant pursuant to the terms of the applicable insurance policy listed herein. To date, the insurer has acknowledged coverage for the Insured's losses following the full cooperation by the Insured during the claim investigation. However, the Insured is unable to complete full repairs and/or replacement of the damaged building materials and return the property to its pre-loss condition based upon the inadequate assessment and adjusting of damages performed by the Insurer. The Insured intends to initiate litigation upon expiration of the statutory timelines pursuant to Fla. Stat. 627.70152 or upon confirmation by the insurer that no further consideration will be given to coverage and/or payment. The Claimant has been copied on this Notice.**

This Notice is being provided following alleged acts or omissions by the insurer other than the denial of coverage.

| | |
|---|---|
| Presuit Settlement Demand: | **$715,000.00** |
| Damages: | **$700,000.00** |
| Attorney Fees: | **$15,000.00** |
| Costs: | **$0.00** |
| Disputed Amount: | **UNKNOWN** |

**Attachments**

The following documents were included as part of this Notice. Please open this Notice online to review or download these documents.
1. AAA Estimate.pdf -

CHUBB

One Beaver Valley Road
Wilmington, DE 19803
O   (636)793-0032
F   (800)664-1765

EXHIBIT I

August 16, 2024

Diverse Legal Solutions
S. Antonio Jimenez, Esq.
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via Electronic Mail: saj@diverselegalsolutions.com*

RE:   Insured:                     Southeastern Seaproducts, Inc.
      Policy Number:            FSF16203592 002
      Claim Number:            KY23K2874003
      Date of Loss:               April 26, 2023
      Description of Loss:     Windstorm
      Loss Location:             1500 Maple Ave., Melbourne, FL 32935

### <u>RESERVATION OF RIGHTS AND REQUEST FOR INFORMATION</u>

Dear Southeastern Seaproducts, Inc.:

Westchester Surplus Lines Insurance Company ("Westchester") is in receipt of your supplemental claim for damages including your Sworn Proof of Loss and estimate prepared by Ask An Adjuster for $983,006.48. As a preliminary matter, Westchester disagrees with the scope included in your proof of loss and accordingly rejects the same. However, in continuing its efforts to find coverage for your April 26, 2023, wind and hail loss, Westchester is in the process of investigating the facts and circumstances of your supplemental claim. Be advised, in the course of our investigation, we identified issues that may restrict, limit, or exclude your recovery for the damages claimed.  Please allow this letter to serve as our Reservation of Rights.

Our records indicate your wind and hail claim was first submitted to Westchester for consideration under Policy FSF16203592 002 by your public adjuster on September 26, 2023 – one hundred fifty-three (153) days after the alleged date of loss of April 26, 2023. As you are aware, under your policy with Westchester, you have a duty to provide prompt notice of the loss along with a duty to retain the damaged property for inspection. Your failure to timely notify Westchester of the claimed damages, along with the completed repairs may have prejudiced Westchester's investigation of your claim. Despite these failures, Westchester endeavored to make a complete and thorough investigation to find coverage for your claim and issue any payment due and owing under the policy.

Subsequent to report of the loss, Westchester immediately engaged the services of Crawford and Company to assist with a physical inspection of the property and an initial inspection was completed on September 29, 2023. Thereafter, and in further evaluating the claimed loss and in continued efforts to find coverage, Westchester retained professional engineer G. Trent VanAllen of Stephens Engineering to determine the cause, origin and extent of any damage.

Jermaine McFarlane of JS Held Construction Consultants was also hired to inspect the property and prepare any estimate of repairs in-line with the engineer's findings. The inspection on October 27, 2023 revealed evidence of hailfall to the vulnerable elements of the property due to both recent and historical hail events. Mr. VanAllen concluded that any hail that had recently and/or historically fallen on the subject property was of insufficient mass and velocity to have caused damage to the roofing. The engineer also observed upwards of ninety-one (91) membrane patches on the roof along with repairs to the roof mounted HVAC condenser units.

Based on the various inspections, on January 26, 2024, Westchester issued a coverage determination letter along with an estimate totaling $37,551.52 for repairs to the property. No payment was issued as the amount of coverage was below your policy's windstorm deductible. Several months later, on April 3, 2024, your public adjuster submitted a supplemental claim for damages supported by an estimate totaling $983,006.48. At this time, we are in the process of completing a coverage investigation with regard to your supplemental claim. On July 15, 2024 and in efforts to determine additional coverage for your loss, Westchester issued a Request for Information. To date, insufficient information has been provided and Westchester accordingly renews the requests herein. Despite our attempts to gather relevant information related to the loss, you and/or your representatives have acted contrary to your Duties under the policy. Accordingly, Westchester's ability to determine the cause, duration, and extent of the alleged damages presented has been prejudiced by your failure to provide prompt notice of the claim, completed repairs before the initial reporting of the claim, and failure to show the damaged property.

As means of follow up to the July 15, 2024, request for information, Westchester hereby requests the below information be submitted by September 6, 2024. If we do not hear from you within twenty (20) days from the date of this letter, we will assume you no longer wish to pursue the supplemental claim. Failure to timely respond to this correspondence may further prejudice Westchester's investigation, could jeopardize coverage and may result in the denial of your supplemental claim due to your failure to comply with your Duties in the Event of Loss or Damage.

In accordance with the policy conditions, we request that you provide to us the following information in relation to the loss **within twenty (20) days**:

1. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof after April 26, 2023.

2. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof from five (5) years prior to the date of loss through the date of loss.

3. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the interior of the property after April 26, 2023.

4. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the exterior of the property after April 26, 2023.

5. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the HVAC system or units after April 26, 2023.

6. Any and all documentation evidencing the damages to the "fresh room" along with any bids, estimates, reports, repair receipts, proofs of payment or other documentation in support of repairs to this area of the property, including, but not limited to the cooler replacement, subsequent to April 26, 2023.

7. Any and all photographs of the alleged damages to the roof in your possession related to the claimed loss.

8. Any and all photographs of the alleged damages to the HVAC systems in your possession related to the claimed loss.

9. Any and all photographs of the alleged damages to the "fresh room" in your possession related to the claimed loss.

10. All information for claims for business personal property, if any, including inventories, photographs, receipts, proof of purchase or other supporting documentation.

11. Occupancy information for any tenants at the property from three (3) years prior to the date of loss through present, including lease agreements, names of occupants and most recent contact information.

12. All permits filed for any repairs completed subsequent to the reported date of loss.

13. Any photographs depicting the condition of the property and the areas claimed damaged prior to the date of loss.

14. Any photographs depicting the condition of the property and the areas claimed damaged subsequent to the date of loss and prior to repairs.

15. Any documents related to replacement of the roof from seven (7) years prior to the date of loss through present, including any bids, estimates, invoices, permits, photographs or other documentation evidencing same.

16. A copy of all records relating to any prior claim, going back to 2017, or supplemental claim under any policy of insurance, indicating the name of the insurer, the policy number and coverages in effect at the time, a list of all items claimed damaged, any and all related estimates, from all sources, invoices, correspondence, coverage determinations, payments received, memoranda, releases, proofs of loss, receipts, contracts with any public adjusters, assignments of benefits, photographs, videos,

sketches, drawings, diagrams or any other depiction of the areas claimed damaged, proof of repairs, litigation documents, or any other documents relating to such claims.

17. Any EMS documents, invoices, contracts, dry logs and all pre- and post-loss photographs.

18. A signed, sworn proof of loss.

19. Any other information or documentation you believe supports your claim, loss or damage to the property.

In addition to the above, **Westchester requests access to the interior and exterior of the insured property to complete a reinspection in light of the supplemental damages claimed**. It is requested you provide three (3) dates of availability within the next thirty (30) days for Westchester's retained engineer and building consultant to complete the same. As a reminder, your failure to comply with any or all of the aforementioned requests could jeopardize coverage under your policy.

Nothing in our continuing investigation of this claim shall in any manner operate as any waiver of the policy's terms, conditions, or exclusions. Please allow this letter to serve as our Reservation of Rights as to all policy provisions and applicable laws in this regard. Please refer to the subject insurance policy, specifically form **CP 00 10 10 12, BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

### 3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

Your duties under the policy clearly set forth your obligation to promptly report the claim and retain the damaged property, as well as Westchester's right to inspect the alleged damages. Westchester does not, by this letter, or otherwise, waive any rights it may have under the subject insurance policy. All rights of the company are reserved. No act of any company representative while investigating the claim shall be construed as waiving any Company rights. Westchester further reserves its rights to assert any additional coverage defenses or positions which may become known or apparent to Westchester at any subsequent or later time. This letter is not intended to be a full disclosure of all policy coverages, conditions, and exclusions. For a full disclosure, please refer to your policy.

Please send the requested documentation and provide dates of availability for reinspection to  mike.fichtelberg.com . This information is needed to assist in the investigation of the loss. Please include the claim number on all correspondence and be sure to retain a copy of your submission for your records. Should you have any additional questions or have any other information you would like for us to consider in regards to this claim, please contact the undersigned at the information shown below.

Thank you for your cooperation in this matter.

*Sherri King*

**Sherri King**
Sr. Claims Director, Property/Inland Marine

Florida License: P128256

One Beaver Valley Rd

Wilmington, DE 19803, United States

O: 636-793-0032   F: 800-664-1765

E: sherri.king1@chubb.com

***Please copy nducorrespondence@chubb.com on all claim correspondence.***

Chubb. Insured.™



EXHIBIT J

10360 West State Road 84, Fort Lauderdale FL 33324 | Phone: (954)370-9970, Fax: (954)382-1988
www.kelleykronenberg.com

August 26, 2024

S. Antonio Jimenez
Diverse Legal Solutions
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via email: saj@diverselegalsolutions.com*

| RE: | Insured: | Southeastern Seaproducts, Inc. |
|---|---|---|
| | Loss Locations: | 1500 Maple Ave., Melbourne, FL 32935 |
| | Nature of Loss: | Windstorm |
| | Date of Loss: | April 26, 2023 |
| | Policy Number: | FSF16203592 002 |
| | Claim Number: | KY23K2874003 |
| | Writing Company: | Westchester Surplus Lines Insurance Company |

Dear Mr. Jimenez:

Westchester Surplus Lines Insurance Company ("Westchester") acknowledges receipt of the Property Insurance Notice of Intent to Initiate Litigation, Notice Number: 204481, accepted by the Florida Department of Financial Services on August 12, 2024 (hereafter referred to as "the Notice"). The Notice was submitted on behalf of Southeastern Seaproducts, Inc.

As a preliminary matter, your Notice is premature as your supplemental claim remains under investigation. To provide a brief background, your wind and hail claim was first submitted to Westchester for consideration by your public adjuster on September 26, 2023 – one hundred fifty-three (153) days after the alleged date of loss of April 26, 2023. Your failure to timely notify Westchester of the claimed damages, along with the completed repairs may have prejudiced Westchester's investigation of your claim. Despite these failures, Westchester endeavored to make a complete and thorough investigation and retained a field adjuster and an engineer to evaluate the cause, extent and duration of the loss.

The engineer inspection on October 27, 2023 revealed evidence of hailfall to the vulnerable elements of the property due to both recent and historical hail events and it was concluded that any hail that had recently and/or historically fallen on the subject property was of insufficient mass and velocity to have caused damage to the roofing. The engineer also observed upwards of ninety-one (91) membrane patches on the roof along with repairs to the roof mounted HVAC condenser units. Based on the various inspections, on January 26, 2024, Westchester issued a coverage determination letter along with an estimate totaling $37,551.52 for repairs to the property. No



payment was issued as the amount of coverage was below your policy's windstorm deductible. Several months later, your public adjuster submitted a supplemental claim for damages supported by an estimate totaling $983,006.48.

At this time, Westchester is in the process of completing a coverage investigation with regard to your supplemental claim. On July 15, 2024 and in efforts to determine additional coverage for your loss, Westchester issued a Request for Information. A Reservation of Rights and Renewed Request for Information along with a Request for Reinspection was sent to you on August 16, 2024. To date, insufficient information has been provided and Westchester has not yet been afforded the opportunity to reinspect. Accordingly, Westchester renews the requests herein:

1. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof after April 26, 2023.

2. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof from five (5) years prior to the date of loss through the date of loss.

3. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the interior of the property after April 26, 2023.

4. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the exterior of the property after April 26, 2023.

5. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the HVAC system or units after April 26, 2023.

6. Any and all documentation evidencing the damages to the "fresh room" along with any bids, estimates, reports, repair receipts, proofs of payment or other documentation in support of repairs to this area of the property, including, but not limited to the cooler replacement, subsequent to April 26, 2023.

7. Any and all photographs of the alleged damages to the roof in your possession related to the claimed loss.

8. Any and all photographs of the alleged damages to the HVAC systems in your possession related to the claimed loss.

9. Any and all photographs of the alleged damages to the "fresh room" in your possession related to the claimed loss.

10. All information for claims for business personal property, if any, including inventories, photographs, receipts, proof of purchase or other supporting documentation.

11. Occupancy information for any tenants at the property from three (3) years prior to the date of loss through present, including lease agreements, names of occupants and most recent contact information.

12. All permits filed for any repairs completed subsequent to the reported date of loss.

13. Any photographs depicting the condition of the property and the areas claimed damaged prior to the date of loss.

14. Any photographs depicting the condition of the property and the areas claimed damaged subsequent to the date of loss and prior to repairs.

15. Any documents related to replacement of the roof from seven (7) years prior to the date of loss through present, including any bids, estimates, invoices, permits, photographs or other documentation evidencing same.

16. A copy of all records relating to any prior claim, going back to 2017, or supplemental claim under any policy of insurance, indicating the name of the insurer, the policy number and coverages in effect at the time, a list of all items claimed damaged, any and all related estimates, from all sources, invoices, correspondence, coverage determinations, payments received, memoranda, releases, proofs of loss, receipts, contracts with any public adjusters, assignments of benefits, photographs, videos, sketches, drawings, diagrams or any other depiction of the areas claimed damaged, proof of repairs, litigation documents, or any other documents relating to such claims.

17. Any EMS documents, invoices, contracts, dry logs and all pre- and post-loss photographs.

18. A signed, sworn proof of loss.

19. Any other information or documentation you believe supports your claim, loss or damage to the property.

In addition to the above, **Westchester requests access to the interior and exterior of the insured property to complete a reinspection in light of the supplemental damages claimed.** It is requested you provide three (3) dates of availability within the next thirty (30) days for Westchester's retained engineer and building consultant to complete the same. Kindly provide the requested information to Michael_Fichtelberg@us.crawco.com.

Nothing in our continuing investigation of this claim shall in any manner operate as any waiver of the policy's terms, conditions, or exclusions. Please allow this letter to serve as our Reservation of Rights as to all policy provisions and applicable laws in this regard. Please refer to the subject insurance policy, specifically form **CP 00 10 10 12**, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or
   damage to Covered Property:

   \*\*\*

   (2) Give us prompt notice of the loss or damage. Include a
   description of the property involved.

   (3) As soon as possible, give us a description of how, when and
   where the loss or damage occurred.

   (4) Take all reasonable steps to protect the Covered Property
   from further damage, and keep a record of your expenses
   necessary to protect the Covered Property, for consideration
   in the settlement of the claim. This will not increase the
   Limit of Insurance. However, we will not pay for any
   subsequent loss or damage resulting from a cause of loss that
   is not a Covered Cause of Loss. Also, if feasible, set the
   damaged property aside and in the best possible order for
   examination.

   (5) At our request, give us complete inventories of the damaged
   and undamaged property. Include quantities, costs, values
   and amount of loss claimed.

   (6) As often as may be reasonably required, permit us to inspect
   the property proving the loss or damage and examine your
   books and records. Also, permit us to take samples of
   damaged and undamaged property for inspection, testing and
   analysis, and permit us to make copies from your books and
   records.

   (7) Send us a signed, sworn proof of loss containing the
   information we request to investigate the claim. You must
   do this within 60 days after our request. We will supply you
   with the necessary forms.

   (8) Cooperate with us in the investigation or settlement of the
   claim.

Notwithstanding the foregoing, and in an abundance of caution, Westchester provides the
following response to the Notice. Pursuant to Florida Statute 627.70152(4)(b) Westchester has
reviewed the allegations in the Notice along with the demand and estimate. Based on the submitted
information, Westchester stands by its findings as you have failed to submit documentation
supporting the damages sought in your estimate. Notwithstanding, in good faith and in accordance
with Florida statute, Westchester hereby makes a settlement offer of One Hundred Thousand

Dollars and zero cents ($100,000.00). This offer is made as a global resolution of this claim and is contingent upon execution of a full and final release to be provided under separate cover.

We would ask that you consider the offer and provide us with a response no later than September 10, 2024 at 5:00 p.m. EST. Should acceptance not be received in writing by 5:00 p.m. EST on September 10, 2024, this offer will be considered rejected.

By stating the foregoing, Westchester does not waive any rights under the policy or law, and nothing in this letter shall constitute a waiver of any right or an admission of any obligation under the policy. Nor shall any conduct of Westchester or its agents, attorneys, or employees be construed as an estoppel, waiver, modification, or surrender of the terms, limitations, exclusions, conditions, or agreements of the insurance policy. As such, Westchester reserves all its rights and defenses under the policy and Florida law, as well as the right to investigate, review, and evaluate any properly stated dispute in the event Westchester receives new or additional information.

If you have any questions or concerns about this claim, please call me as soon as possible so that we may have the opportunity to address them promptly and fairly.

Sincerely,

*Todd A. Schwartz*
Todd A. Schwartz, Esq.

EXHIBIT K



September 5, 2024

**VIA EMAIL:** sherri.king1@chubb.com, nducorrespondence@chubb.com
Sherri King
Sr. Claims Director
Chubb
One Beaver Valley Road
Wilmington, DE 19803

> **Re:   Insured:      Southeastern Seaproducts, Inc.**
> **Claim No:     KY23K2874003**
> **Policy No:    FSF16203592 002**
> **D/Loss:       4.26.23**

Dear Ms. King:

I am in receipt of your August 16, 2024 correspondence requesting additional compliance with the policy's "Duties After Loss." I write in response thereto.

I wrote to your predecessor, George Lasho, on May 29, 2024.   In that correspondence I requested: a certified copy of the policy of insurance in force at the time of this claim, copies of any and all documents, including but not limited to, correspondence to/from the insured, estimates, including any estimates prepared by representatives of the insured, copies of any payments and corresponding estimates, recorded and/or transcribed statements of any insured as well as any reports from any experts you may have retained in the investigation and evaluation of this claim.  To date I have only recently received a copy of the policy and a copy of your January 24, 2024 coverage determination letter, which was provided by your counsel following our August 8, 2024 mediation.  At this time, I reiterate my requests for these items.

Further, your company elected to partially deny coverage for my client's loss following a full investigation and cooperation by my client.  Specifically, you denied coverage for the roof.  As a result, my clients are not required to cooperate with any further requests for post-loss compliance.  Well established Florida law holds that "…an insurer, by unconditionally denying any liability upon its policy, waives proof of loss required by the policy."  Hartford Accident & Indem. Co. v. Phelps, 294 So.2d 362, 365 (Fla. 1st DCA 1974) see also Castro v. Homeowner's Choice Prop. & Cas. Ins. Co., 228 So.3d 596 (Fla. 2nd DCA 2017).

Nevertheless, I have spoken with my client regarding your requests.   An exhaustive search has been completed.  I hereby provide the documents you request in

full cooperation with the policy's duties after loss provision. The items are quite voluminous, so they are being sent via Dropbox link. The link will expire in seven days.

All other items you request have been previously provided or are not in my client's possession, e.g., my client previously provided a sworn statement in proof of loss (which you acknowledge in your August 16, 2024 correspondence yet request once again). Numerous requests contained in your correspondence are unreasonable, irrelevant, accessible via public record and/or unduly burdensome. There are no other documents relevant to the claim currently in the policyholder's possession.

Finally, kindly contact scheduling@diverselegalsolutions.com to arrange for your engineer/building consultant inspection. Ensure I am copied any such correspondence. My client will provide access at a mutually convenient time.

Thank you for your time and attention to this matter. If you have any further questions, feel free to contact me at saj@diverselegalsolutions.com or at the contact information below.

Kind regards,

  /s/ S. Antonio Jimenez
S. Antonio Jimenez, Esq.

Enclosure/attachments via Dropbox link

https://www.dropbox.com/t/xpmgGdAmmRqJ8qrH

EXHIBIT L



DIVERSE
LEGAL SOLUTIONS
A   L A W   F I R M

September 13, 2024

**VIA EMAIL:** sherri.king1@chubb.com, nducorrespondence@chubb.com
Sherri King
Sr. Claims Director
Chubb
One Beaver Valley Road
Wilmington, DE 19803

> **Re:**   **Insured:**   **Southeastern Seaproducts, Inc.**
> **Claim No:**   **KY23K2874003**
> **Policy No:**   **FSF16203592 002**
> **D/Loss:**   **4.26.23**

Dear Ms. King:

Accept this correspondence as my client's invocation of the policy's appraisal provision. My client has selected the following individual as its chosen appraiser:

> Edward Bittman
> Edward Bittman, Inc.
> edwardbittman@gmail.com
> 561.512.5544

Kindly name your appraiser in the coming twenty days per the policy's terms. Feel free to contact me anytime should you wish to discuss this or any other matter.

Kind regards,

_/s/ S. Antonio Jimenez_
S. Antonio Jimenez, Esq.

cc. Mark Maynard, Jr., Edward Bittman (via email only)

EXHIBIT M

CHUBB

Eastern Claim Service Center
600 Independence Parkway
Chesapeake, VA 23327-4700
O    (800) 252-4670
F    (800) 664-5358

Mailing Address
P.O. Box 4700
Chesapeake, VA 23327-4700

September 24, 2024

Diverse Legal Solutions
S. Antonio Jimenez, Esq.
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via Electronic Mail: saj@diverselegalsolutions.com*

| RE: | Insured: | Southeastern Seaproducts, Inc. |
|---|---|---|
| | Policy Number: | FSF16203592 002 |
| | Claim Number: | KY23K2874003 |
| | Date of Loss: | April 26, 2023 |
| | Description of Loss: | Windstorm |
| | Loss Location: | 1500 Maple Ave., Melbourne, FL 32935 |

### REJECTION OF APPRAISAL DEMAND, RENEWED RESERVATION OF RIGHTS AND REQUEST FOR INFORMATION

Dear Southeastern Seaproducts, Inc.:

Westchester Surplus Lines Insurance Company ("Westchester") is in receipt of your request to invoke appraisal under Policy No.: FSF16203592 002 in regard to your April 26, 2023, wind and hail claim reported for consideration on September 26, 2023 – one hundred fifty-three (153) days after the date of loss. Despite your failure to promptly report the claim, Westchester endeavored to make a complete and thorough investigation to find coverage for your loss and issue any payment due and owing under the policy. After inspection with an independent adjuster and professional engineer, on January 26, 2024, Westchester issued a coverage determination letter along with an estimate totaling $37,551.52 for repairs to the property. Several months later, you submitted a supplemental claim for damages along with your Sworn Proof of Loss and estimate prepared by Ask An Adjuster totaling $983,006.48, including an increased scope of damages being claimed.

At present, Westchester is actively engaged in the process of investigating the facts and circumstances of your supplemental claim. On July 15, 2024, and in efforts to determine additional coverage for your loss, Westchester issued a Request for Information to obtain documentation pertinent to the damages being claimed in your estimate. Further, as you were previously made aware via correspondence dated August 16, 2024, and August 26, 2024, in the course of our investigation, we identified issues that may restrict, limit, or exclude your recovery for the damages claimed. Accordingly, please allow this letter to serve as our renewed Reservation of Rights and Request for Information. To date, insufficient information has been provided and Westchester accordingly renews the prior requests herein. Despite our attempts to gather relevant information related to the loss, you and/or your representatives have acted contrary to your Duties under the

policy. Westchester's ability to determine the cause, duration, and extent of the alleged damages presented has been prejudiced by your failure to provide prompt notice of the claim, completed repairs before the initial reporting of the claim, lack of response to outstanding requests and failure to show the damaged property.

In light of the continued investigation into your supplemental claim for damages, including the pending reinspection and outstanding documentation, the claim investigation remains ongoing and your request for appraisal is premature at this time.

Please refer to the subject insurance policy, specifically form **CP 00 10 10 12**, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

> ### 2. Appraisal
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

Westchester's investigation into your supplemental claim for damages remains ongoing. While you may have a right to appraisal under the Policy at a future date, Westchester has a right to complete its investigation and provide a supplemental coverage determination. In addition, before appraisal is ripe, you must comply with your **Duties in the Event of Loss or Damage**.

As means of follow up to the July 15, 2024, August 16, 2024, and August 26, 2024 Requests for Information, Westchester hereby requests the below information be submitted by October 4, 2024. While Westchester is in receipt of your September 9, 2024, submission, the various undated and unidentified photographs, and videos are insufficient and wholly nonresponsive to the requests. Please be advised that continued failure to timely respond to this correspondence may further prejudice Westchester's investigation, could jeopardize coverage and may result in the denial of your supplemental claim due to your failure to comply with your Duties in the Event of Loss or Damage.

In accordance with the policy conditions, we request that you provide to us the following information in relation to the loss **within ten (10) days**:

1. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof after April 26, 2023.

2. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the roof from five (5) years prior to the date of loss through the date of loss.

3. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repair and/or repairs completed to the interior of the property after April 26, 2023.

4. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the exterior of the property after April 26, 2023.

5. Any and all invoices, receipts, estimates, proofs of payment, or other documents evidencing any bids for repairs and/or repairs completed to the HVAC system or units after April 26, 2023.

6. Any and all documentation evidencing the damages to the "fresh room" along with any bids, estimates, reports, repair receipts, proofs of payment or other documentation in support of repairs to this area of the property, including, but not limited to the cooler replacement, subsequent to April 26, 2023.

7. Any and all photographs of the alleged damages to the roof in your possession related to the claimed loss.

8. Any and all photographs of the alleged damages to the HVAC systems in your possession related to the claimed loss.

9. Any and all photographs of the alleged damages to the "fresh room" in your possession related to the claimed loss.

10. All information for claims for business personal property, if any, including inventories, photographs, receipts, proof of purchase or other supporting documentation.

11. Occupancy information for any tenants at the property from three (3) years prior to the date of loss through present, including lease agreements, names of occupants and most recent contact information.

12. All permits filed for any repairs completed subsequent to the reported date of loss.

13. Any photographs depicting the condition of the property and the areas claimed damaged prior to the date of loss.

Page 3 of 6

14. Any photographs depicting the condition of the property and the areas claimed damaged subsequent to the date of loss and prior to repairs.

15. Any documents related to replacement of the roof from seven (7) years prior to the date of loss through present, including any bids, estimates, invoices, permits, photographs or other documentation evidencing same.

16. A copy of all records relating to any prior claim, going back to 2017, or supplemental claim under any policy of insurance, indicating the name of the insurer, the policy number and coverages in effect at the time, a list of all items claimed damaged, any and all related estimates, from all sources, invoices, correspondence, coverage determinations, payments received, memoranda, releases, proofs of loss, receipts, contracts with any public adjusters, assignments of benefits, photographs, videos, sketches, drawings, diagrams or any other depiction of the areas claimed damaged, proof of repairs, litigation documents, or any other documents relating to such claims.

17. Any EMS documents, invoices, contracts, dry logs and all pre- and post-loss photographs.

18. A signed, sworn proof of loss.

19. Any other information or documentation you believe supports your claim, loss or damage to the property.

In addition to the above, Westchester reserves its right to examine the insured under oath about any matter relating to this insurance or the claim. As a reminder, your failure to comply with any or all of the aforementioned requests could jeopardize coverage under your policy.

Nothing in our continuing investigation of this claim shall in any manner operate as any waiver of the policy's terms, conditions, or exclusions. Please allow this letter to serve as our Renewed Reservation of Rights as to all policy provisions and applicable laws in this regard. Please refer to the subject insurance policy, specifically form **CP 00 10 10 12**, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

**3. Duties In The Event Of Loss Or Damage**

    **a.** You must see that the following are done in the event of loss or damage to Covered Property:

        ***

        **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

Page 4 of 6

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Your duties under the policy clearly set forth your obligation to promptly report the claim and retain the damaged property, as well as Westchester's right to inspect the alleged damages. Westchester does not, by this letter, or otherwise, waive any rights it may have under the subject insurance policy. All rights of the company are reserved. No act of any company representative while investigating the claim shall be construed as waiving any Company rights. Westchester further reserves its rights to assert any additional coverage defenses or positions which may become known or apparent to Westchester at any subsequent or later time. This letter is not

Page 5 of 6

intended to be a full disclosure of all policy coverages, conditions, and exclusions. For a full
disclosure, please refer to your policy.

Please send the requested documentation to Michael.fichtelberg@us.crawco.com. This
information is needed to assist in the investigation of the loss. Please include the claim number on
all correspondence and be sure to retain a copy of your submission for your records. Should you
have any additional questions or have any other information you would like for us to consider in
regard to this claim, please contact the undersigned at the information shown below.

Thank you for your cooperation in this matter.

*Sherri King*

**Sherri King**
Sr. Claims Director, Property/Inland Marine
Florida License: P128256

One Beaver Valley Rd
Wilmington, DE 19803, United States

O: 636-793-0032 F: 800-664-1765
E: sherri.king1@chubb.com

***Please copy nducorrespondence@chubb.com on all claim correspondence.***

EXHIBIT N



DIVERSE
LEGAL SOLUTIONS
A  L A W  F I R M

October 9, 2024

**VIA EMAIL:** sherri.king1@chubb.com, nducorrespondence@chubb.com
Sherri King
Chubb
One Beaver Valley Road
Wilmington, DE 19803

Re: **Insured:    Southeastern Seaproducts, Inc.**
    **Claim No:    KY23K2874003**
    **Policy No:   FSF16203592 002**
    **D/Loss:      4.26.23**

Dear Ms. King:

I am in receipt of your September 24, 2024 correspondence refusing to comply with the policy's appraisal provision. I write in response thereto. You allege that my client has failed to comply with your August 26, 2024 request for information and the policy's "Duties After Loss." This is false.

As indicated in my September 5, 2024 correspondence my client has conducted an exhaustive search for all documents and items requested. All documents and items my client was able to locate have been provided to you. Those items were sent to you via DropBox link. Your company now has *all relevant and responsive documents*. There are no other documents relevant to the claim currently in my client's possession or locatable pursuant to a reasonable search for same.

The purpose of appraisal is to facilitate a prompt resolution of disputes. Florida law requires a meaningful exchange of information and a dispute as to the amount of the loss prior to appraisal. This has occurred. Further, at least three separate inspections of the property have been completed by your inspectors/agents. You have had ample time and information to be apprised of the dispute as to the amount of loss, complete this investigation and identify your chosen appraiser per the policy's terms.

Be advised that you are now in breach of the policy's appraisal terms and conditions. My client reserves the right to pursue all legal remedies against your company including filing a lawsuit to enforce its appraisal rights.

Thank you for your time and attention to this matter. If you have any further questions, feel free to contact me at saj@diverselegalsolutions.com or at the contact information below.

Kind regards,

 /s/ S. Antonio Jimenez
S. Antonio Jimenez, Esq.

cc.  Mark Maynard and Michael Fichtelberg (via email)

EXHIBIT O



10360 W State Road 84, Fort Lauderdale FL 33324 | Phone: (954)370-9970, Fax: (954)382-1988
www.kelleykronenberg.com

November 20, 2024

**VIA EMAIL**
Southeastern Seaproducts, Inc.
Diverse Legal Solutions, A Law Firm, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

| | | |
|---|---|---|
| RE: | Policyholder: | Southeastern Seaproducts, Inc. |
| | Policy Number: | FSF16203592 002 |
| | Claim number: | KY23K2874003 |
| | Date of Loss: | April 26, 2023 |
| | Property: | 1500 Maple Ave, Melbourne, FL 32935 |

## -NOTICE OF EXAMINATION UNDER OATH
### **PLEASE IMMEDIATELY ADVISE IF INTERPRETER WILL BE NEEDED**

Please take notice that, in coordination with your attorney, we have scheduled the Examination Under Oath ("EUO") of Mark Maynard or the person with most knowledge of the claim for **December 11, 2024 at 2:00 P.M.**, before a Notary Public/court reporter from Veritext Legal Solutions via Zoom – (Zoom link sent separately). Westchester Surplus Lines Insurance Company is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether certain coverage exists for the subject loss and the extent of funds due. Please be advised that a court reporter will be present for the purpose of recording testimony and in an abundance of caution, an entire day should be made available so that the examination may be completed. You may also have an attorney present if you wish. No further action may be taken on the claims until the examination under oath has been completed and all documents requested have been produced. Any failure to provide the requested records and documents or any other failure to cooperate with the investigation may constitute a material breach of a policy condition potentially jeopardizing coverage for the claims under the policy and prejudicing the claims investigation.

In an effort to avoid any misunderstanding, by scheduling this Examination Under Oath, Westchester Surplus Lines Insurance Company is not waiving any rights they have under the subject insurance policy, applicable law, or otherwise. Similarly, Westchester Surplus Lines Insurance Company does not waive any defenses it has with regard to the subject insurance policy.

It is important to attend the scheduled examination under oath and provide to permit the insurance company to complete its investigation of the claims.

**Please bring with you the originals of the items listed on the attached Schedule "A."** If you are no longer in possession of the original documents, please bring a copy of these items with you.

Should you have any questions or comments concerning this matter, please do not hesitate to contact the undersigned. Thank you for your cooperation in this matter.

**KELLEY KRONENBERG**

Very truly yours,

*Todd A. Schwartz*

Todd A. Schwartz

## SCHEDULE "A"
### DEFINITIONS

1.     The term "documents" means and includes, without limitation, all writings of any kind, including the originals and all non-identical copies or drafts, whether printed, recorded, stored, or reproduced by any mechanical or electronic process or written or produced by hand, including computer tapes (and backup tapes), whether different from the original by reason of any notation made on such copy or draft or otherwise including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, e-mail, electronic computer files, telegrams, minutes, contracts, reports, accident reports, incident reports, studies, calculations, computations, surveys, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, circulars, trade letters, advertisements, interoffice communications, offers, notations of any sort of conversation(s), telephone calls, meetings or other communications, bulletins, printed matter, computer print-outs, teletypes, facsimiles, invoices, work sheets and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, graphic or aural writs, records or representations of any kind including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, mechanical or electric records or representations of any kind including, without limitation, tapes, cassettes and disc recordings, and writings and printed material of every kind, whether or not the document is out of your possession, custody or control.

1.     The term "correspondence" means any tangible object that conveys information or memorializes information that was conveyed in tangible or oral form including, but not limited to, writings, letters, memoranda, electronic mail (otherwise known as "e-mail"), facsimiles, reports, notes, telegrams and interoffice communication.

2.     The term "relating to" as used herein is defined to mean evidencing, referring to, pertaining to, consisting of, reflecting, concerning, or in any way logically or factually connected with the matters discussed.

3.     The term "and" as well as "or" as used herein shall be read and applied as though interchangeable and shall be construed either disjunctively or conjunctively so as to require the fullest and most complete disclosure of all required information and documents.

4.     The term "property" or "subject property" refers to the properties 1500 Maple Ave, Melbourne, FL 32935

5.     The term "you" or "your" refers to Southeastern Seaproducts, Inc.

6.     The term "loss" refers to your claim for damages resulting from the April 26, 2023, loss as reported to Westchester Surplus Lines Insurance Company and/or its representatives and/or its agents by you.

## PLEASE BRING THE FOLLOWING DOCUMENTS WITH YOU
## TO YOUR EXAMINATION UNDER OATH

1. Your driver's license.

2. All agreements for representation between yourself and any individual or business entity representing you in this action.

3. All documents submitted to Westchester Surplus Lines Insurance Company, and/or its agents or representatives, including but not limited to the original transaction receipts provided to Westchester Surplus Lines Insurance Company.

4. All correspondence submitted to Westchester Surplus Lines Insurance Company, and/or its agents or representatives.

5. A signed, sworn proof of loss relating to the loss.

6. Any and all documents relating to damages claimed for the loss, including but not limited to estimates, work orders, proposals, statements, invoices, or contracts.

7. Any and all bills incurred as a result of the loss. This includes repair receipts or invoices for work performed on the Property related to the subject claim.

8. Any and all documents evidencing repairs or replacement of damaged, contents including but not limited to bills, invoices, statements, contracts, or work orders or work performed as a result of the loss.

9. Any and all documents evidencing the original purchase of items that you are claiming as a result of the loss including but not limited to, cancelled checks, bills of sale, receipts, credit card statements, ATM receipts, and bank statements.

10. Any and all documents evidencing the replacement of the items that you are claiming as a result of the loss including but not limited to, cancelled checks, bills of sale, receipts, credit card statements, ATM receipts, and bank statements.

11. Any and all documents evidencing repairs or replacement of damaged property, including but not limited to invoices, statements, contracts, or work orders for damages claimed for the loss.

12. Any and all payments for repairs or replacement of damaged property for the loss, including but not limited to, cancelled checks, bills of sale, receipts, credit card statements, ATM receipts, and bank statements.

13. Any and all photographs, videos, and diagrams demonstrating the damages or property you are claiming as a result of the loss.

14.   A complete contents inventory for all property claimed as a result of the loss.

15.   Any and all documents or other items you believe Westchester Surplus Lines Insurance Company should review in considering your claim to attribute claimed damages to a covered loss.

16.   Any emergency mitigation invoices and/or documentation for the subject claim.

17.   Any engineer or expert reports relating to the subject claim.

18.   Any documents related to remodeling and/or renovations that were completed, planned or in the process of being completed to the subject properties within two (2) years prior to the reported date of loss.

19.   Any and all documents related to property damage at the subject properties within five (5) years prior to the reported date of loss, including, but not limited to any prior reported claims.

20.   Any maintenance records related to the roof or any interior leaks at the subject property from five (5) years prior to the loss and from the date of loss until today.

EXHIBIT P



December 10, 2024

**VIA EMAIL: tschwartz@kelleykronenberg.com**
Todd A. Schwartz, Esq.
Kelley Kronenberg
10360 W State Road 84
Ft. Lauderdale, FL 33324

Re:    **Insured:    Southeastern Seaproducts, Inc.**
       **Claim No:   KY23K2874003**
       **Policy No:  FSF16203592 002**
       **D/Loss:     4.26.23**

Dear Mr. Schwartz:

I write in response to your November 10, 2024 correspondence wherein you request production of various documents in advance of the examination under oath. My client has conducted an exhaustive search for all relevant documents. Those items were previously produced and are once again enclosed herewith.

Numerous requests contained in your correspondence are unreasonable, irrelevant, and unduly burdensome. Additionally, my client previously provided you with a copy of a sworn statement in proof of loss. Nevertheless, it is included again. There are no other documents relevant to the claim currently in the policyholder's possession.

Fla. Stat. 627.70131(5)(a) states in relevant part as follows: "Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policy holder, the insurer shall pay or deny such claim or a portion of the claim unless failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment."

Hopefully, my client's continued cooperation with your requests will facilitate a swift conclusion following the examination.

Kind regards,

 /s/ S. Antonio Jimenez
S. Antonio Jimenez, Esq.

Enclosures. Diverse Legal Solutions letter of representation, Notices of Intent to Initiate Litigation #19808 & #20481, Responses to Notices of Intent to Initiate Litigation (2), Reservation of Rights dated August 16, 2024, Response to Request for Information dated

September 5, 2024, Invocation of Appraisal dated September 13, 2024, Chubb Response to Invocation of Appraisal dated September 24, 2024, Reply to Response to Invocation of Appraisal dated October 9, 2024, Emails exchanged by counsels commencing August 1, 2024, Ask an Adjuster letter of representation, Estimate and Photo Sheet, sworn proof of loss, Weather/Storm Report, September 27, 2023 AMRR LLC Invoice, Incryo, LLC invoice May 13, 2023, Premier AC & Mechanical Inc. Estimate #2064 January 6, 2024, Eagleview, 9 jpeg images or damaged products, 13 jpeg images of HVAC removal, 138 jpeg images of interior warehouse/property, 6 videos of warehouse interior, 44 jpeg images of emergency TPO/roof repairs. (via Dropbox link).

EXHIBIT Q

**CHUBB**

**Chubb**
P.O. Box 716
Portland, ME 04104
Fax: (800) 300-2538

O: 636-793-0032
E: sherri.king1@chubb.com

January 13,2025

Diverse Legal Solutions
S. Antonio Jimenez, Esq.
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via Electronic Mail: saj@diverselegalsolutions.com*

| RE: | Insured: | Southeastern Seaproducts, Inc. |
|---|---|---|
| | Policy Number: | FSF16203592 002 |
| | Claim Number: | KY23K2874003 |
| | Date of Loss: | April 26, 2023 |
| | Description of Loss: | Windstorm |
| | Loss Location: | 1500 Maple Ave., Melbourne, FL 32935 |

## <u>RENEWED RESERVATION OF RIGHTS AND REQUEST FOR INFORMATION</u>

Dear Southeastern Seaproducts, Inc.:

As you are aware, your April 26, 2023 wind and hail claim remains under investigation at this time. Your claim, claim No.: KY232874003 was reported to Westchester Surplus Lines Insurance Company ("Westchester") under Policy No.: FSF16203592 002 on September 26, 2023 – one hundred fifty-three (153) days after the date of loss and after repairs were completed to the property. Despite your failure to promptly report the claim and show the damaged property, Westchester has endeavored to make a complete and thorough investigation to find coverage for your loss and issue any payment due and owing. After inspection with an independent adjuster and professional engineer, on January 26, 2024, Westchester issued a coverage determination letter along with an estimate totaling $37,551.52 for repairs to the property. Several months later, you submitted a supplemental claim for damages along with your Sworn Proof of Loss and estimate prepared by Ask An Adjuster totaling $983,006.48, including an increased scope of damages being claimed.

On July 15, 2024 and in continuing the investigation into your supplemental claim, Westchester issued a Request for Information to obtain documentation pertinent to your estimate, the damages being claimed and any repairs to the property. A Renewed Reservation of Rights and Request for Information was sent on September 24, 2024 following up on the documentation previously requested. In addition, Westchester requested your Examination Under Oath, and Mark Maynard, Jr. sat for the same on December 16, 2024.

In consideration of the ongoing investigation, as well as the incomplete documentation received in response to Westchester's multiple requests and the testimony provided at the Examination Under Oath, Westchester has identified issues that may restrict, limit, or exclude your recovery for the damages claimed. Accordingly, please allow this letter to serve as Westchester's renewed Reservation of Rights and Request for Information. To date, only partial and incomplete information has been provided. Based on the testimony provided at the Examination Under Oath, Westchester renews the prior requests herein, along with the additional requests below. Despite our attempts to gather relevant information related to the loss, you and/or your representatives have acted contrary to your Duties under the policy. Westchester's ability to determine the cause, duration, and extent of the alleged damages presented has been prejudiced by your failure to provide prompt notice of the claim, completed repairs before the initial reporting of the claim, lack of response to outstanding requests and failure to show the damaged property.

As means of follow up to the July 15, 2024, August 16, 2024, August 26, 2024 and September 24, 2024 Requests for Information, Westchester hereby requests the below information be submitted by January 28,2025While Westchester is in receipt of your previous submission, numerous documents responsive to the requests were identified at the Examination Under Oath and have yet to be provided. In addition, the various undated and unidentified photographs and videos are insufficient and wholly nonresponsive to the requests. Please be advised that continued failure to fully respond to this correspondence may further prejudice Westchester's investigation, could jeopardize coverage and may result in the denial of your supplemental claim due to your failure to comply with your Duties in the Event of Loss or Damage.

Additionally, contradictory and unsubstantiated information provided to date may be a material misrepresentation of the claim and covered property, potentially voiding coverage for the reported loss. We respectfully refer you to policy form **ACE0755 (02/13) COMMERICAL PROPERTY CONDITIONS**, which states as follows:

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

*** 

**4.** A claim under this Coverage Part.

In accordance with the policy conditions, we request that you provide to us the following information in relation to the loss **within ten (10) days**:

1. Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the roof after April 26, 2023.

2. Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the roof subsequent to September 10, 2017 and prior to April 26, 2023.

3.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the interior of the property after April 26, 2023.

4.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the exterior of the property after April 26, 2023.

5.  Any and all invoices, receipts, estimates, work orders, bids, proofs of payment, or other documents evidencing any repairs completed to the HVAC system or units after April 26, 2023.

6.  Any and all documentation evidencing the damages to the "fresh room" along with any bids, estimates, work orders, supplies or materials ordered, reports, repair receipts, proofs of payment in any form or other documentation in support of repairs to this area of the property, including, but not limited to the cooler replacement, subsequent to April 26, 2023.

7.  Any and all photographs or videos of the alleged damages to the roof in your possession related to the claimed loss along with time and date stamp and/or metadata.

8.  Any and all photographs or videos of the alleged damages to the HVAC systems in your possession related to the claimed loss along with time and date stamp and/or metadata.

9.  Any and all photographs or videos of the alleged damages to the "fresh room" in your possession related to the claimed loss along with time and date stamp and/or metadata.

10. Any and all photographs or videos of any damage being claimed related to the loss in your possession along with time and date stamp and/or metadata.

11. All information for claims for business personal property, if any, including inventories, photographs, receipts, proof of purchase or other supporting documentation.

12. Occupancy information for any tenants at the property from three (3) years prior to the date of loss through present, including lease agreements, names of occupants and most recent contact information.

13. All permits filed for any repairs completed subsequent to the reported date of loss, including, but limited to roof replacement.

14. Any photographs depicting the condition of the property and the areas claimed damaged prior to the date of loss including time and date stamp and/or metadata.

15. Any photographs depicting the condition of the property and the areas claimed damaged subsequent to the date of loss and prior to repairs including time and date stamp and/or metadata.

16. Any documents related to replacement of the roof from seven (7) years prior to the date of loss through present, including any bids, estimates, invoices, permits, photographs or other documentation evidencing same.

17. *A copy of all records relating to any prior claim, going back to 2017, or supplemental claim under any policy of insurance,* indicating the name of the insurer, the policy number and coverages in effect at the time, a list of all items claimed damaged, any and all related estimates, from all sources, invoices, correspondence, coverage determinations, payments received, memoranda, releases, proofs of loss, receipts, contracts with any public adjusters, assignments of benefits, photographs, videos, sketches, drawings, diagrams or any other depiction of the areas claimed damaged, proof of repairs, litigation documents, or any other documents relating to such claims.

18. Any EMS documents, invoices, contracts, dry logs and all pre- and post-loss photographs.

19. A signed, sworn proof of loss.

20. Any other information or documentation you believe supports your claim, loss or damage to the property.

As a reminder, your failure to comply with any or all of the aforementioned requests could jeopardize coverage under your policy.

Nothing in our continuing investigation of this claim shall in any manner operate as any waiver of the policy's terms, conditions, or exclusions. Please allow this letter to serve as our Renewed Reservation of Rights as to all policy provisions and applicable laws in this regard. Please refer to the subject insurance policy, specifically form **CP 00 10 10 12, BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

**3. Duties In The Event Of Loss Or Damage**
 **a.** You must see that the following are done in the event of loss or damage to Covered Property:
  **\*\*\***
  **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.
  **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
  **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
  **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
  **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
  **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
  **(8)** Cooperate with us in the investigation or settlement of the claim.

     **b.**  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Your duties under the policy clearly set forth your obligation to promptly report the claim and retain the damaged property, as well as Westchester's right to inspect the alleged damages. Westchester does not, by this letter, or otherwise, waive any rights it may have under the subject insurance policy. All rights of the company are reserved. No act of any company representative while investigating the claim shall be construed as waiving any Company rights. Westchester further reserves its rights to assert any additional coverage defenses or positions which may become known or apparent to Westchester at any subsequent or later time. This letter is not intended to be a full disclosure of all policy coverages, conditions, and exclusions. For a full disclosure, please refer to your policy.

Please send the requested documentation to sherri.king1@chubb.com. This information is needed to assist in the investigation of the loss. Please include the claim number on all correspondence and be sure to retain a copy of your submission for your records. Should you have any additional questions or have any other information you would like for us to consider in regards to this claim, please contact the undersigned at the information shown below.

Thank you for your cooperation in this matter.

*Sherri King*

**Sherri King**
Sr. Claims Director, Property/Inland Marine
Florida License: P128256

O: 636-793-0032 F: 800-664-1765
E: sherri.king1@chubb.com

.

computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Diverse Legal Solutions, A Law Firm, Inc., for damage arising in any way from its use.

EXHIBIT R

[Quoted text hidden]

---

**S. Antonio Jimenez** <saj@diverselegalsolutions.com>                                    Fri, Feb 21, 2025 at 6:04 PM
To: "King, Sherri L" <Sherri.King1@chubb.com>
Cc: Property Reports <propertyreports@chubb.com>, Mark Jr Maynard <markjr@frozenliveshellfish.com>

Good evening Ms. King,
My client has conducted a reasonable search for information related to your January 13, 2025 correspondence.  Attached hereto find all responsive documents my client was able to locate regarding requests for documentation, invoices/estimates, correspondence, proofs of loss, etc., related to the 2017 insurance claim and associated repairs.


Kind regards,


S. Antonio Jimenez, Esq.
Diverse Legal Solutions, A Law Firm, Inc.
55 Weston Road, Suite 408
Weston, FL 33326
Telephone: 954.361.7507
Fax: 954.354.3338
www.diverselegalsolutions.com
saj@diverselegalsolutions.com



**PRIVILEGE AND CONFIDENTIALITY NOTICE:** This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The contents of this e-mail message and any attachments are intended solely for the party or parties addressed and named in this message. This communication and all attachments, if any, are intended to be and to remain confidential, and it may be subject to the applicable attorney - client and or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute, or copy this message and or any attachments if you are not the intended recipient. Do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Although this E-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Diverse Legal Solutions, A Law Firm, Inc., for damage arising in any way from its use.

[Quoted text hidden]

**3 attachments**

📄 **Rhyne Restoration-113017-InvH1179-$277,894.33.pdf**
196K

📄 **Rhyne Restoration-Final Invoice 113017.pdf**
462K

**Rhyne Restoration-Misc.pdf**
6021K

EXHIBIT S

**CHUBB**

**Chubb**
P.O. Box 716
Portland, ME 04104
Fax: (800) 300-2538

O: 636-793-0032
E: sherri.king1@chubb.com

March 18, 2025

Diverse Legal Solutions
S. Antonio Jimenez, Esq.
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via Electronic Mail: saj@diverselegalsolutions.com*

RE:    Insured:                   Southeastern Seaproducts, Inc.
          Policy Number:        FSF16203592 002
          Claim Number:        KY23K2874003
          Date of Loss:          April 26, 2023
          Description of Loss:   Windstorm
          Loss Location:        1500 Maple Ave., Melbourne, FL 32935

## FINAL RESERVATION OF RIGHTS AND REQUEST FOR INFORMATION

Dear Southeastern Seaproducts, Inc.:

Westchester Surplus Lines Insurance Company ("Westchester") is in receipt of the limited documentation you provided on February 21, 2025 in response to the previous Reservations of Rights and Requests for Information. At this time, essential information identified at the Examination Under Oath of the Insured remains outstanding, despite multiple requests. Accordingly, please accept this as Westchester's Final Request For Information. While your April 26, 2023 wind claim remains under investigation, the failure to timely respond will result in closure of your supplemental claim.

As means of background, your claim, claim No.: KY232874003 was reported to Westchester Surplus Lines Insurance Company ("Westchester") under Policy No.: FSF16203592 002 on September 26, 2023 – one hundred fifty-three (153) days after the date of loss and after repairs were completed to the property. Despite your failure to promptly report the claim and show the damaged property, Westchester has endeavored to make a complete and thorough investigation to find coverage for your loss and issue any payment due and owing. After inspection with an independent adjuster and professional engineer, on January 26, 2024, Westchester issued a coverage determination letter along with payment totaling $37,551.52 for repairs to the property. Several months later, you submitted a supplemental claim for damages along with your Sworn Proof of Loss and estimate prepared by Ask An Adjuster totaling $983,006.48, including an increased scope of damages being claimed.

On July 15, 2024 and in continuing the investigation into your supplemental claim, Westchester issued a Request for Information to obtain documentation pertinent to your estimate, the damages

being claimed and any repairs to the property. A Renewed Reservation of Rights and Request for Information was sent on September 24, 2024 following up on the documentation previously requested. In addition, Westchester requested your Examination Under Oath, and Mark Maynard, Jr. sat for the same on December 16, 2024. Subsequent to the Examination, Westchester sent a Request for Information on January 13, 2025, seeking relevant documentation referenced in sworn testimony, yet to be provided to Westchester for review.

In consideration of the ongoing investigation, as well as the incomplete documentation received in response to Westchester's multiple requests and the testimony provided at the Examination Under Oath, Westchester has identified issues that may restrict, limit, or exclude your recovery for the damages claimed. Accordingly, please allow this letter to serve as Westchester's final Reservation of Rights and Request for Information. To date, only partial and incomplete information has been provided. Based on the testimony provided at the Examination Under Oath, Westchester renews the prior requests herein, along with the additional requests below. Despite our attempts to gather relevant information related to the loss, you and/or your representatives have acted contrary to your Duties under the policy. Westchester's ability to determine the cause, duration, and extent of the alleged damages presented has been prejudiced by your failure to provide prompt notice of the claim, completed repairs before the initial reporting of the claim, lack of response to outstanding requests and failure to show the damaged property.

As means of follow up to the July 15, 2024, August 16, 2024, August 26, 2024, September 24, 2024 and January 13, 2025 Requests for Information, Westchester hereby requests the below information be submitted by within 10 days of receipt of this letter. While Westchester has reviewed your previous submission, numerous documents responsive to the requests were identified at the Examination Under Oath and have yet to be provided, including documents directly related to the repairs, photographs evidencing the claimed damage. In addition, the various undated and unidentified photographs and videos are insufficient and wholly nonresponsive to the requests. Please be advised that continued failure to fully respond to this correspondence may further prejudice Westchester's investigation, could jeopardize coverage and will result in closure of your claim due to your failure to comply with your Duties in the Event of Loss or Damage.

Additionally, contradictory and unsubstantiated information provided to date may be a material misrepresentation of the claim and covered property, potentially voiding coverage for the reported loss. We respectfully refer you to policy form **ACE0755 (02/13) COMMERICAL PROPERTY CONDITIONS**, which states as follows:

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.**     This Coverage Part;
**2.**     The Covered Property;
         ***
**4.**     A claim under this Coverage Part.

In accordance with the policy conditions, we request that you provide to us the following information in relation to the loss **within ten (10) days**:

1.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the roof after April 26, 2023.

2.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the roof subsequent to September 10, 2017 and prior to April 26, 2023.

3.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the interior subsequent to September 10, 2017 and prior to April 26, 2023.

4.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the interior of the property after April 26, 2023.

5.  Any and all invoices, receipts, estimates, bids, work orders and/or proofs of payment evidencing any labor, materials, or other documentation related to repairs completed to the exterior of the property after April 26, 2023.

6.  Any and all invoices, receipts, estimates, work orders, bids, proofs of payment, or other documents evidencing any repairs completed to the HVAC system or units after April 26, 2023.

7.  Any and all documentation evidencing the damages to the "fresh room" along with any bids, estimates, work orders, supplies or materials ordered, reports, repair receipts, proofs of payment in any form or other documentation in support of repairs to this area of the property, including, but not limited to the cooler replacement, subsequent to April 26, 2023.

8.  Any and all photographs or videos of the alleged damages to the roof in your possession related to the claimed loss along with time and date stamp and/or metadata.

9.  Any and all photographs or videos of the alleged damages to the HVAC systems in your possession related to the claimed loss along with time and date stamp and/or metadata.

10. Any and all photographs or videos of the alleged damages to the "fresh room" in your possession related to the claimed loss along with time and date stamp and/or metadata.

11. Any and all photographs or videos of any damage being claimed related to the loss in your possession along with time and date stamp and/or metadata.

12. All information for claims for business personal property, if any, including inventories, photographs, receipts, proof of purchase or other supporting documentation.

13. Occupancy information for any tenants at the property from three (3) years prior to the date of loss through present, including lease agreements, names of occupants and most recent contact information.

14. All permits filed for any repairs completed subsequent to the reported date of loss, including, but limited to roof replacement.

15. Any photographs depicting the condition of the property and the areas claimed damaged prior to the date of loss including time and date stamp and/or metadata.

16. Any photographs depicting the condition of the property and the areas claimed damaged subsequent to the date of loss and prior to repairs including time and date stamp and/or metadata.

17. Any documents related to replacement of the roof from seven (7) years prior to the date of loss through present, including any bids, estimates, invoices, permits, photographs or other documentation evidencing same.

18. *A copy of all records relating to any prior claim, going back to 2017, or supplemental claim under any policy of insurance,* indicating the name of the insurer, the policy

number and coverages in effect at the time, a list of all items claimed damaged, any and all related estimates, from all sources, invoices, correspondence, coverage determinations, payments received, memoranda, releases, proofs of loss, receipts, contracts with any public adjusters, assignments of benefits, photographs, videos, sketches, drawings, diagrams or any other depiction of the areas claimed damaged, proof of repairs, litigation documents, or any other documents relating to such claims.

19. Any EMS documents, invoices, contracts, dry logs and all pre- and post-loss photographs.

20. A signed, sworn proof of loss.

21. Any other information or documentation you believe supports your claim, loss or damage to the property.

As a reminder, your failure to comply with any or all of the aforementioned requests could jeopardize coverage under your policy.

Nothing in our continuing investigation of this claim shall in any manner operate as any waiver of the policy's terms, conditions, or exclusions. Please allow this letter to serve as our Renewed Reservation of Rights as to all policy provisions and applicable laws in this regard. Please refer to the subject insurance policy, specifically form **CP 00 10 10 12, BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which reads in part:

> **3. Duties In The Event Of Loss Or Damage**
>    **a.** You must see that the following are done in the event of loss or damage to Covered Property:
>      ***
>    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.
>    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
>    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
>    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take

samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Your duties under the policy clearly set forth your obligation to promptly report the claim and retain the damaged property, as well as Westchester's right to inspect the alleged damages. Westchester does not, by this letter, or otherwise, waive any rights it may have under the subject insurance policy. All rights of the company are reserved. No act of any company representative while investigating the claim shall be construed as waiving any Company rights. Westchester further reserves its rights to assert any additional coverage defenses or positions which may become known or apparent to Westchester at any subsequent or later time. This letter is not intended to be a full disclosure of all policy coverages, conditions, and exclusions. For a full disclosure, please refer to your policy.

Please send the requested documentation to sherri.king1@chubb.com. This information is needed to assist in the investigation of the loss. Please include the claim number on all correspondence and be sure to retain a copy of your submission for your records. Should you have any additional questions or have any other information you would like for us to consider in regards to this claim, please contact the undersigned at the information shown below.

Thank you for your cooperation in this matter.

*Sherri King*

**Sherri King**
Sr. Claims Director, Property/Inland Marine
Florida License: P128256

One Beaver Valley Rd
Wilmington, DE 19803, United States

O: 636-793-0032 F: 800-664-1765
E: sherri.king1@chubb.com

**_Please copy nducorrespondence@chubb.com on all claim correspondence._**

EXHIBIT T



# DIVERSE
# LEGAL SOLUTIONS
A  L A W  F I R M

March 28, 2025

**VIA EMAIL:** sherri.king1@chubb.com, nducorrespondence@chubb.com
Sherri King
Sr. Claims Director
Chubb
One Beaver Valley Road
Wilmington, DE 19803

Re:    Insured:    **Southeastern Seaproducts, Inc.**
          Claim No:   **KY23K2874003**
          Policy No:   **FSF16203592 002**
          D/Loss:      **4.26.23**

Dear Ms. King:

I am in receipt of your March 18, 2025 correspondence requesting additional compliance with the policy's "Duties After Loss." I write in response thereto.

September 5, 2024, October 9, 2024, December 10, 2024 and February 21, 2025 I wrote in response to the numerous requests for information and documentation presented by your company. All of those previous correspondences and documents are attached hereto once again. Kindly accept this as my client's continued effort to cooperate in your investigation.

To date my client has not only provided all the documentation it is able to locate in response to your company's voluminous requests it produced Mark Maynard, Vice President, to testify and answer all questions posed for several hours. My client has fully complied with all demands placed upon it do date.

Notwithstanding the continued efforts to cooperate and facilitate information in furtherance of your investigation, I have once again asked my client to search for additional documents in response to your most recent request. An exhaustive search has been completed. However, there is nothing further to produce. I am including a Dropbox link to all documents my client has been able to locate once again. Below is a detailed response to your numerical requests:

1. Provided.
2. Provided.
3. None/unable to locate.
4. Provided.
5. Provided.

55 Weston Road, Suite 408
Weston, FL 33326
T 954.361.7507 • F 954.354.3338
diverselegalsolutions.com

6. None/unable to locate.
7. Provided.
8. Provided.
9. Provided.
10. None/unable to locate. All photographs have been provided. None have date/time stamps.
11. None/unable to locate.
12. Not applicable.
13. Public record equally accessible to your company via a simple search online.
14. This request lacks a reasonable time request. All photographs in my clients possession related to the claim and/or requests have been produced.
15. Provided.
16. Provided.
17. Provided.
18. Not applicable.
19. Provided.

September 13, 2024 my client invoked the appraisal provision of the insurance policy. Your company has refused to identify its chosen appraiser in violation of the policy. While my client understands the need to gather information regarding the claim the protracted refusal to comply is now unreasonable and violates my client's right to have this matter swiftly resolved via appraisal. This is my client's final demand that your company comply and identify its chosen appraiser in the next 7 days.

Thank you for your time and attention to this matter. If you have any further questions, feel free to contact me at saj@diverselegalsolutions.com or at the contact information below.

Kind regards,

 /s/ S. Antonio Jimenez
S. Antonio Jimenez, Esq.

cc. Mark Maynard (via email).

Enclosures. via Dropbox link:

https://www.dropbox.com/t/wpyMpB8YVQEwjdPA

EXHIBIT U

**CHUBB**

Eastern Claim Service Center
600 Independence Parkway
Chesapeake, VA 23327-4700
O  (800) 252-4670
F  (800) 664-5358

Mailing Address
P.O. Box 4700
Chesapeake, VA 23327-4700

May  27 , 2025

Diverse Legal Solutions
S. Antonio Jimenez, Esq.
c/o Southeastern Seaproducts, Inc.
55 Weston Road, Suite 408
Weston, FL 33326

*Sent via Electronic Mail: saj@diverselegalsolutions.com*

RE:  Insured:                Southeastern Seaproducts, Inc.
     Policy Number:          FSF16203592 002
     Claim Number:           KY23K2874003
     Date of Loss:           April 26, 2023
     Description of Loss:     Windstorm
     Loss Location:          1500 Maple Ave., Melbourne, FL 32935

## <u>SUPPLEMENTAL COVERAGE DETERMINATION LETTER</u>

Dear Southeastern Seaproducts, Inc.:

This letter is to inform you that Westchester Surplus Lines Insurance Company ("Westchester") has reviewed the documentation you provided in support of your supplemental claim for damages submitted under Policy No.: FSF16203592 002 for Claim No.: KY23K2874003 with a reported date of loss of April 26, 2023. In Westchester's ongoing investigation to find coverage for the loss and taking into consideration the limited information provided, along with your testimony at the Examination Under Oath, for the reasons set forth herein, please be advised that we are closing our investigation into this matter without extending additional coverage. Be advised Westchester's ability to determine the cause and origin of the loss and extent of the damage you have claimed has been prejudiced due to your lack of prompt reporting of the claim, completing repairs and renovations prior to report of the loss, and lack of compliance in submitting previously requested documentation and information.

As means of background, your claim was reported to Westchester on September 26, 2023 – one hundred fifty-three (153) days after the date of loss and after you and your employees completed repairs and renovations to the property. Despite your failure to promptly report the claim and show the damaged property, Westchester endeavored to make a complete and thorough investigation to find coverage for your loss and issue any payment due and owing. After inspection with an independent adjuster and professional engineer, on January 26, 2024, Westchester issued a coverage determination letter along with payment totaling $37,551.52 for repairs to the property after deductible and depreciation. Several months later, you submitted a supplemental claim for damages along with your Sworn Proof of Loss and estimate prepared by Ask An Adjuster totaling $983,006.48, including a substantially increased scope of damages being claimed.

On July 15, 2024 and in continuing the investigation into your supplemental claim, Westchester issued a Request for Information to obtain documentation pertinent to your estimate, the damages being claimed and any repairs to the property. Due to lack of response, a Renewed Reservation of Rights and Request for Information was sent on September 24, 2024 following up on the documentation previously requested. In addition, Westchester requested your Examination Under Oath, and Mark Maynard, Jr. sat for the same on December 16, 2024.

Subsequent to the Examination Under Oath, Westchester issued a Request for Information on January 13, 2025, seeking relevant documentation referenced in sworn testimony, including invoices related to the completed repairs and renovations along with photographs of the alleged damage to the interior. A Final Reservation of Rights and Request for Information was issued on March 18, 2025 due to your lack of response. To date, documentation substantiating the scope and pricing of the completed repairs has not been provided to Westchester despite multiple requests for same. In addition, photographs, video or other information evidencing damage to the fresh room and other areas of the property have not been provided. Moreover, certain files you provided, depicting claimed damage Mr. Maynard testified was related to the instant matter pre-date the subject loss.

To date, despite multiple requests, Westchester has not received the requested documentation, other than a limited response, and has not been able to conduct an independent investigation into your supplemental claim for damages due to your continued failures to comply. These failures are in violation of your Duties In The Event of Loss or Damage and are a material breach of your insurance Policy. Due to the lack of prompt reporting of this claim, repairs and renovations completed prior to notifying Westchester of damage and having an opportunity to inspect, along with your inability to provide documentation requested as part of the multiple correspondence and requests, Westchester has not been able to determine either the cause of the damage or the extent of the damage that may be related to this loss. Due to this prejudice and lack of cooperation with our investigation based on your failure to comply, no coverage can be extended for this claim at this time. Multiple opportunities and extensions were provided to provide the requested information as to the damages claimed in this loss, many of which went without a response. The Policy, Form **CP 00 10 10 12**, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, states:

**3. Duties In The Event Of Loss Or Damage**

    **a.** You must see that the following are done in the event of loss or damage to Covered Property:

**\*\*\***

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of

Page 2 of 4

the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Due to your failure to comply with your **Duties in the Event of Loss**, including failure to promptly report the claim, failure to cooperate with the investigation of this claim, failure to provide requested documentation, including proof of completed repairs and failure to show the damaged property, Westchester's ability to independently determine the facts of the loss for the damage presented has been prejudiced. Your failure to comply with our requests further prejudiced our investigation into the cause and extent of damage. Accordingly, we are closing our file and investigation into this matter without extending any coverage.

Additionally, depictions of damage, testified to at Examination Under Oath as related to the loss have been determined to pre-date the loss and are a material misrepresentation of the claim and covered property, voiding coverage for the reported loss. We respectfully refer you to policy form **ACE0755 (02/13) COMMERICAL PROPERTY CONDITIONS**, which states as follows:

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.**      This Coverage Part;

    **2.**      The Covered Property;

             ***

    **4.**      A claim under this Coverage Part.

Based on the foregoing, your demand for appraisal is rejected. We expressly reserve our right to assert all other rights or defenses that we may have to this claim even though not enumerated above. We do not waive or relinquish any of our rights under the policy of insurance.

The closing of this claim does not relieve you of any duty to maintain your property. Please keep in mind that you have an obligation to maintain the insured property and prevent further damage.

Thank you for your cooperation in this matter.

*Sherri King*

**Sherri King**
Sr. Claims Director, Property/Inland Marine
Florida License: P128256

One Beaver Valley Rd
Wilmington, DE 19803, United States

O: 636-793-0032 F: 800-664-1765
E: sherri.king1@chubb.com

***Please copy nducorrespondence@chubb.com on all claim correspondence.***

For your protection, state law requires that we inform you of the following:  Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.